## TEXAS & N. O. R. CO. v. RITTIMANN.

### No. 9562.

Court of Civil Appeals of Texas. San Antonio.

Oct. 30, 1935.

Rehearing Denied Nov. 27, 1935.

Baker, Botts, Andrews & Wharton, of Houston, and Templeton, Brooks, Napier & Brown, and W. L. Matthews, all of San Antonio, for appellant.

Carter & Lewis, of San Antonio, for appellee.

BOBBITT, Justice.

The appellant, Texas & New Orleans Railroad Company, defendant in the court below, presents this appeal from a judgment of the district court of Bexar county, Tex., awarding damages in the sum of $20,000 in favor of appellee, Walter G. Rittimann, plaintiff in the trial court, for personal injuries alleged to have been sustained by appellee while in the service of appellant, and by reason of the alleged negligence of appellant.

The parties will here be designated as in the trial court.

Plaintiff is a farmer residing on his farm near the railroad station of Schertz, in Bexar county, which is on the main line of the defendant railroad company, and at which place it maintained a large elevated water tank and other facilities to supply water for use in its locomotives and for other railroad purposes. Defendant, under the terms of a written agreement, engaged plaintiff to operate its pumping plant and keep a supply of water in its said tank; defendant furnishing all tools and facilities for such purpose, the plaintiff only giving his personal service to the work. It was the duty of plaintiff, under the agreement between the parties, to keep the tank full of water; to keep the defendant's premises, including its machinery and surroundings used by him, in a neat and orderly condition; to make such minor repairs as he was capable of making, with the understanding that he was not required to make heavy repairs beyond his capacity. All work was to be performed under the supervision and direction of the superintendant of defendant.

The defendant's said water tank was a large wood structure of the class and the kind ordinarily used for such purposes, placed upon a heavy timber platform

about 17 feet high; the tank itself being about 17 feet in height. A stepladder made of wood was located to the side of the tank, its bottom end placed and secured on the ground, about 10 or 12 feet from the platform on which the tank was resting, and reaching above and against the top of the tank about 34 feet from the ground. This ladder was fastened or braced to the top of the heavy platform on which the tank rested, by boards nailed to the side of the ladder about 17 feet from the ground and to the large timbers on top of and constituting the joists of the tank platform. It is undisputed that two such braces run from each side of the ladder, to which they were nailed, direct and parallel with each other, to the tank platform where they were nailed to either side of a heavy timber support or joist under the tank.

In order that the location of these braces be made as clear as possible, and by reason of the importance of their location in this case, we will identify these two braces as follows: The brace to the right side of the ladder will be referred to as brace A; the one parallel thereto and nailed to the left side of the ladder will be referred to as brace B. These two braces are parallel, and, as stated, are nailed to the right and left side of the ladder, respectively, and to either side of a 12 by 12 inch beam, one of the joists under, and being a part of, the platform upon which the tank rested, some 17 feet from the ground.

It is undisputed that another board or brace was nailed on top of brace B, adjoining the ladder, and running to the left of the ladder at an angle, some 6 or 7 feet, and there nailed to another heavy timber support constituting a part of the platform upon which the tank rested. This brace will be referred to as brace C. There was another board or brace nailed to the top of brace A, on the right of the ladder, and running at an angle to another and corresponding heavy beam or joist constituting a part of the tank platform. This board or brace will be referred to as board D.

From the testimony, and particularly the photographs and the graph introduced in evidence and before us, it appears that when the ladder was originally constructed this board or brace D was nailed to the top of brace A, adjoining the ladder in the same position on the right side of

the ladder that board or brace C occupied to the left of the ladder. It is clear to us, however, if not undisputed by the testimony, that at the time of the accident with which we are concerned in this case, said board D was nailed to the top of brace A, some three feet back of the ladder and in toward the tank and about 18 inches from the tank. This board extended from this location a distance of about 4 feet, and was nailed to the heavy timber support under the tank to the right of the ladder. This is the board or brace which it is conceded broke with plaintiff when he walked on it, on the 20th day of October, 1931, causing the injuries to plaintiff.

We will here refer to the point, or place, upon which this board was nailed to the top of brace A as point E, and to the point, or place, to which the other end of said board was nailed on the timber support of the platform as point F. From the graph and numerous photographs introduced in evidence and exhibited to the jury, and which are before us, and to which the several witnesses referred and pointed out in their testimony in the presence of the jury, through such indications and references as "from here to there," and "from this point to that place," without designating a particularly identified place or point on the graph or the photographs, it has been difficult to follow the testimony and get at an understanding of the true situation without carefully reading the testimony with the exhibits before us. We have, however, read all of such testimony and carefully examined each of the photographs and the graph in connection therewith, and have the location of the board which broke and caused the fall and injuries to plaintiff clear in our own minds. If the exhibits to which the witnesses referred in their testimony had been carefully numbered or lettered, as they explained the location and position of the board and the other facts to which they referred, the work of all concerned would have been simplified and the facts more clearly understood.

From point F on one of the heavy timber supports of the platform, and running up on the outside of the tank from its bottom to the top thereof, was a structure, or gauge, painted white, with figures thereon, and within which structure was situated a marker or indicator which showed the depth of the water in the tank. In

other words, this indicator or marker moved up and down on the outside of the tank as the water rose and receded inside. It was such a gauge and marker as is customarily used on such tanks. It is undisputed that this indicator or marker was intended and did serve to show to the plaintiff, whose duty it was to keep the tank full of water, the depth of the water in said tank.

Plaintiff alleged that on October 20, 1931, while in the discharge of his duties, it became necessary for him to ascend the ladder and step on the board D to reach and dislodge the marker on the gauge, which was out of order and not registering the depth of water in the tank; that when he stepped on such board, provided and maintained for such purpose, and because of its weak, decayed, and defective condition, it broke under his weight, causing him to fall some 20 feet to the ground, and resulting in the serious and permanent injuries of which he complains; that said board was placed as it was placed for the use of plaintiff and other employees or persons working on or about said tank; that it was intended for such use and was customarily so used by plaintiff and others; that he was in the performance of his duties when thus injured; that defendant was guilty of negligence in causing or permitting said board to become weak and decayed and in failing to discover and remedy the same, which negligence caused and contributed to plaintiff's injuries; that he was an employee of defendant and by reason of defendant's negligence, as alleged, he was seriously and permanently injured, rendering him unable to work, and that he suffered constant physical and mental pain, and would be so afflicted the balance of his life; that prior to his said injuries he was a strong, able-bodied man, able and willing to do all kinds of hard work, with an earning capacity of about $125 per month, which he had a reasonable expectancy to increase; that by reason of his said permanent and serious injuries, caused by defendant's negligence, he was wholly unable to work and would be incapacitated and unable to work the balance of his life; that he had been damaged in the sum of $40,000.

Defendant alleged that plaintiff was not its employee, but, under the terms of his contract of employment, he was an independent contractor; that the board D, which broke with plaintiff, was simply and only a ladder brace and not designed or intended to be stepped on or walked on by plaintiff or other persons; that it owed plaintiff no duty, as alleged by him, to keep the said board safe to step or walk on, and that defendant was not negligent as to plaintiff in said matter; that plaintiff voluntarily stepped on the ladder brace, board D in question, and attempted to walk thereon, thereby putting the board or brace to a use for which it was not intended, and assumed the risk of doing so and was thereby guilty of negligence, which negligence contributed to cause the accident and was the sole cause of the accident resulting in the injuries to plaintiff.

The cause was tried before a jury, which, on special issues submitted under appropriate instructions, returned a verdict, finding: (1) That on the occasion of the plaintiff's fall he had gone on the board in question in the performance of his duty; (2) that at the time of the accident plaintiff was an employee of the defendant; (3) that the board which broke with plaintiff was. designed to be stepped on and stood on to facilitate reaching the water gauge by persons working about the tank; (4) that on the occasion of the accident the board which broke with the plaintiff was weak and defective; (5) that defendant failed to exercise ordinary care to discover and remedy the defective condition of said board; (6) that such failure to remedy the condition of the board constituted negligence upon the part of the defendant; (7) that such negligence was a proximate cause of the fall and injuries to the plaintiff; (8) that plaintiff was not an independent contractor; (9) that the board in question that broke with plaintiff was not designed solely as a brace for the ladder; (10) that plaintiff was negligent in stepping or walking on the board in question in the manner in which he did; (11) that such negligence contributed to plaintiff's fall and injuries; (12) that such contributory negligence was not the sole cause of plaintiff's fall and injuries; (13) that plaintiff was not negligent in failing to discover and repair the board in question; (14) that plaintiff did not assume the risk in stepping or walking upon the board in question in the manner in which he did.

The jury assessed damages in favor of plaintiff in the amount of $20,000, and,

based upon such verdict, judgment was entered in favor of plaintiff in that amount.

This case has been fully and ably briefed by counsel for both sides. Exceptions and objections have been made to some of the assignments and propositions raised by both parties as not being in conformity with the rules, and in some instances, which we will not take time to point out, and from a technical viewpoint, some such may be good. In view of the fact that we have, under the circumstances of this case, been required to fully review the entire record, we are not inclined and we do not sustain any exceptions or objections by either party to the assignments or propositions submitted by the other. We have considered all assignments and propositions.

█ We will first consider the status or relationship of the parties. It is undisputed that plaintiff, at the time of his fall and injury, was performing work for defendant under the provisions of the written contract duly executed between the parties, and introduced in evidence. This contract sets out the duties to be performed by the plaintiff, the consideration to be paid therefor, and expressly provides: "It is understood that all work performed by second party (plaintiff) shall be under the supervision and direction of the first party's (defendant's) Superintendent." Furthermore, it is stipulated: "This agreement may be terminated by either party at any time by giving to the other party five days' written notice of its desire to terminate same." Such contract sets out that plaintiff should use the facilities of defendant in his work, and, as above stated, plaintiff furnished nothing in line with his work and duties, except his personal services and labor.

It is clear to us that, under the terms of the contract of employment itself, the plaintiff occupied the status of an employee and not that of an independent contractor. Clearly, under the provisions of the contract in effect, the defendant "retained the right of control" over the work of the plaintiff on its premises and in the use of its facilities in the discharge of his duties. It is the right or authority to control, and not the exercise thereof, which determines the status or relationship of the parties.

While there is no doubt in our minds, from the record before us, that plaintiff was an employee of defendant at the time of his injuries, it appears that both parties and the trial court treated this question as one of fact. Both parties adduced testimony explaining the conduct as well as the authority of the agent of defendant to control and direct the acts of plaintiff in the discharge of his duties. The trial court submitted to the jury, and it found as a fact, that the plaintiff was an employee of defendant and not an independent contractor at the time of his injuries. We, therefore, overrule the contention of defendant in this regard, and hold that the trial court correctly refused defendant's motion for judgment non obstante veredicto. Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S.W. 399; Fidelity Union Life Ins. Co. v. McGinnis (Tex.Civ.App.) 62 S.W.(2d) 186; Liberty Mut. Ins. Co. v. Boggs (Tex.Civ. App.) 66 S.W.(2d) 787; Tex. Jur., vol. 23, p. 550; King v. Galloway (Tex.Com. App.) 284 S.W. 942, and authorities therein cited.

█ Defendant insists that the board which broke with plaintiff, and as a result of which he was injured, was not designed, maintained, or intended to be stepped on or walked on by plaintiff or others; that it was solely and only a ladder brace, and that its use by plaintiff in the manner in which he used it was negligence; that defendant owed plaintiff no legal duty to maintain said board in a condition to be stepped on or walked on, and that the trial court should have instructed a verdict for defendant. Furthermore, defendant contends that the trial court erred in overruling its motion for judgment non obstante veredicto, for the reason that a directed verdict would have been proper under the evidence. These contentions cannot be sustained, and are overruled. Each and every contention made by defendant in these respects were properly submitted to the jury, which upon disputed facts and testimony, and under proper instructions from the trial court, found the facts against the defendant's contentions.

█ By its fourth and fifth propositions defendant complains of the action of the trial court in submitting to the jury special issues Nos. 3 and 5 in the form submitted.

Defendant contends that special issue No. 3, "Was the board which broke with the plaintiff designed to be stepped on or stood on to facilitate reaching the

water gauge by persons working about the water tank in question?" is unfair and prejudicial, "because the same does not submit an ultimate issue." This special issue, in such form, is more favorable to the contentions of defendant than was required under the facts of this case. Such issue, as submitted, imposed a greater burden upon plaintiff than the more simple and direct question, "Was the board which broke with plaintiff designed to be stepped on or stood on?" and defendant certainly is not prejudiced by the court's submitting and requiring the jury to find that the "board was designed to be stood or stepped on for a particular purpose." We think the record and the contentions of defendant herein clearly show that the issue, as submitted, constitutes an ultimate issue. One of the principal, if not the main defense of defendant herein is that the board in question was not designed or intended to be stood or stepped on, and that it owed plaintiff no duty to maintain it for such purpose. Defendant's fourth proposition is therefore overruled.

In its fifth proposition defendant contends that the trial court erred in submitting issue No. 5, in the form, "Did the defendant fail to exercise ordinary care to discover and remedy said condition"; that such issue is duplicitous. It seems clear to us that such issue, in reality, involves only the simple and ultimate issue or question as to whether defendant exercised ordinary care in respect to the condition of the board that it is conceded broke with plaintiff, causing his fall and injuries.

We think the provisions of article 2189, R. S. 1925, when properly considered and their true intent and purpose given effect, have been complied with in the submission of special issue No. 5, and defendant's fifth proposition is overruled. City of Abilene v. Moore (Tex.Civ.App.) 12 S. W.(2d) 604; Austin v. De George (Tex. Civ.App.) 55 S.W.(2d) 585; Houston, E. & W. T. Ry. Co. v. Hough (Tex.Civ.App.) 260 S.W. 233; Texas Electric Ry. v. Jones (Tex.Civ.App.) 262 S.W. 131; Wortham v. Bull (Tex.Civ.App.) 19 S.W. (2d) 211; Dallas Ry & Terminal Co. v. Nix (Tex.Civ.App.) 22 S.W.(2d) 488, and authorities therein cited.

The complaints of defendant, set out in its seventh and eighth propositions, are without merit, and are overruled. There was ample testimony to sustain the finding of the jury that plaintiff walked on the board in question in the performance of his duty. Several witnesses testified that such board was customarily used for such purposes, and then one of the superintendents for defendant testified that on one occasion he stepped on such board while clearing away birds' nests from the tank or water gauge. The jury found, in response to a clear-cut issue, No. 1, that plaintiff went upon the board in the performance of his duties. The testimony fully authorizes such finding, and the trial court properly declined to submit the other issues requested by defendant, and complained of in its seventh and eighth propositions.

The jury, after hearing all the testimony, observing the witnesses, receiving the instructions of the trial court, exercised their judgment and performed their duty of assessing the damages in this case. Defendant in its brief states that plaintiff was disabled for only a period of three months, and complains that because the jury found plaintiff guilty of contributory negligence and awarded him damages in the sum of $20,000 they were motivated in so doing by passion and prejudice against defendant. We have carefully read and considered all of the testimony in reference to the nature and extent of plaintiff's injuries. Defendant does not refer to or cite any portion of the recorded testimony to sustain its contention. The record reveals the testimony of several witnesses other than plaintiff or members of his family, showing that he fell a distance of about 20 feet; his head and body striking heavy beams about the tank. He was picked up unconscious, taken to the hospital; five ribs were broken, and a fractured and displaced collar and breast bone resulted, the ends of which are now overlapping, causing a large and painful lump on the chest. He suffered serious injuries about the head; a hole was cut entirely through his chin; his teeth loosened; and he suffered a concussion of the brain. His eyesight and hearing have been seriously impaired and he suffers, more or less continuously, with headaches and dizzy spells, and his mind and memory have become impaired. The record shows that he suffers constant pain, as a result of his numerous injuries; that the fractured collar bone and displaced breast bone draw his shoulder and arm out of place, causing his shoulder to drop down impairing the use of his arm; and that his suffer-

ings and injuries have made him extremely nervous and prevent him from obtaining sleep. From the testimony of plaintiff and his wife, and two physicians of outstanding reputation, H. H. Ogilvie and Frank L. Paschal, it is shown that the plaintiff has been totally incapacitated ever since the accident, and both of these physicians testified positively that in their opinion his injuries were permanent, and that he was permanently disabled. At the time of his injuries, it is undisputed that plaintiff was a healthy, robust, hard-working man; he was forty-one years of age at the time of his injuries, and had an earning capacity of $125 per month. The defendant offered no witnesses in respect to the serious or permanent nature and extent of plaintiff's injuries, other than its local surgeon at Schertz, who attended plaintiff at the time of his injuries and for a short time thereafter.

It is clear from competent and sufficient testimony, contained in the record before us, that the jury was justified in reaching the conclusion they did and assessing the damages in the amount awarded. There is no suggestion by defendant of any prejudice on the part of any member of the jury, or any evidence that the jury did not fairly and impartially reach its verdict, other than the. assumption made by defendant, and which assumption is based solely on the amount of damages awarded. The jury found that the plaintiff was guilty of contributory negligence in walking on the board in question in the manner in which he did, which clearly indicates that the jury was undertaking impartially to fix the responsibility for the accident resulting in plaintiff's injuries, and we have no right to assume, and we do not assume, that the jury did anything other than follow the correct instructions of the court in respect to taking into account the contributory negligence of plaintiff in fixing the amount of damages in its verdict. We conclude that defendant's ninth proposition is without merit, and it is overruled.

Under appropriate and sufficient testimony and under proper instructions the jury has awarded the damages herein at $20,000, and its verdict and the judgment of the court based thereon should not be disturbed. Texas & N. O. R. Co. v. McGinnis (Tex.Civ.App.) 81 S.W.(2d) 200; Texas & N. O. R. Co. v. Bell (Tex.Civ. App.) 28 S.W.(2d) 853; Galveston, H. & S. A. Ry. Co. v. Stevens (Tex.Civ.App.) 94 S.W. 395; Texas & N. O. R. Co. v. Kelly, 34 Tex.Civ.App. 21, 80 S.W. 1073; Houston & T. C. R. Co. v. Gray (Tex.Civ. App.) 137 S.W. 729, and authorities therein cited.

By its tenth and eleventh propositions defendant complains of the closing argument made to the jury by counsel for the plaintiff, and asserts that the verdict of the jury should have been set aside and a new trial awarded defendant on the ground that such arguments were not supported by the evidence, and were calculated to and did inflame and prejudice the members of the jury against the defendant.

By reason of the great amount of time and space given by counsel for defendant in their briefs to these alleged errors, and the vigorous arguments made in respect thereto, we have, with much care, reviewed the testimony and the circumstances involved, and references to which was made by counsel for plaintiff, and which defendant asserts constitutes such improper argument as to require a reversal of this case.

In the first instance, defendant complains of the argument of plaintiff's attorney concerning the absence from the trial of the board which broke with plaintiff at the time of his injuries. It is undisputed that after the accident the board was procured by defendant's agents, brought to San Antonio, and placed in defendant's storeroom. There was considerable testimony in reference to the loss of the board; or at least to the fact that it had always been in defendant's possession, since the accident, and that it was not produced for use in evidence or for exhibit at the trial. It is true that the argument of plaintiff's counsel in respect to the fact that defendant did not show or produce the broken board in question at the trial was pointed and vigorous. It is likewise true that his reference thereto was based upon much testimony in the record concerning the absence of the board. We do not find from a careful review of the testimony, and from the argument quoted in defendant's brief as having been made to the jury by counsel for the plaintiff, that it was not based upon the testimony, or justified by the facts and circumstances developed on the trial. The record does not reveal that counsel for defendant made any objection or took any exception to the argument of plaintiff's counsel as now complained about,

nor did he make any suggestion to the trial court in respect thereto at the time the argument was made. We do not find that the trial court committed error in refusing to set aside the verdict of the jury in favor of plaintiff by reason of such argument, and defendant's tenth proposition is overruled.

■ The defendant complains of the closing argument of counsel for plaintiff in respect to the fact, developed during the trial, that plaintiff, who was within military age during the World War, did not enter the army, though he was an able-bodied man. The record shows that counsel for the defendant, on at least two occasions during the taking of testimony, inquired as to whether or not the plaintiff had an army record; and it is shown that after this question had been injected into the case, and after defendant's counsel had once objected, he then withdrew his objection, and plaintiff was interrogated and testified at length before the jury that he was not in the army during the World War, and the reasons why he did not enter the military service. In view of the fact that this circumstance was injected into the trial of this case by the defendant, and counsel for the defendant referred to the same on at least two occasions, and withdrew his objection to an explanation as to why plaintiff was not in the army, though under proper rules of evidence such facts were certainly irrelevant and immaterial to the issues involved, we cannot and do not conclude that the argument made by counsel for the plaintiff, in which reference was made to such matters, was improper; or that it justified or required the trial court to set aside the verdict of the jury. Likewise, in this instance, defendant made no objection or exception to the argument while it was being made, nor did he call attention of the trial court thereto, and the trial court, in the exercise of his duty, and who heard the argument, did not see fit to make any objection to the same as being improper.

A deliberate review of the argument attributed to counsel for plaintiff and about which defendant complains, together with careful and complete reference to all the testimony to which it was addressed in both instances, does not, in our opinion, lead to the conclusion reached and stated by defendant in its assignments of error. The trial judge who heard the arguments in the presence of all counsel found no material error therein, and this Court does not find that the trial judge committed the errors asserted by defendant in this respect, and defendant's contentions are overruled. The defendant, in its brief, sets out the correct rule as to the duty of the trial and appellate courts in cases of improper arguments, but in the case before us we do not find the arguments complained of to be improper, when all the facts and circumstances are considered, and the numerous cases cited by defendant do not apply in the instant case. Texas Indemnity Ins. Co. v. McCurry (Tex.Com.App.) 41 S.W.(2d) 215, 78 A. L. R. 760; Perkins v. Nail (Tex. Civ.App.) 37 S.W.(2d) 211; Atex Const. Co. v. Farrow (Tex.Civ.App.) 71 S.W.(2d) 323; Reilly v. Buster (Tex.Civ.App.) 52 S.W.(2d) 521; San Antonio, U. & G. R. Co. v. Hagen (Tex.Civ.App.) 188 S.W. 954; Davis v. Etter & Curtis (Tex.Civ. App.) 243 S.W. 603; Robbins v. Wynne (Tex.Com.App.) 44 S.W.(2d) 946; Harmon v. Ketchum (Tex.Civ.App.) 299 S.W. 682.

It is our opinion that this case has been fairly tried; the issues of fact properly submitted to and definitely determined by the jury on disputed testimony; and finding no reversible error in connection with the trial, the judgment of the trial court should be in all things affirmed, and it is so ordered.

Affirmed.