## TEXAS EMPLOYERS' INS. ASS'N v. STANTON.
### No. 5139.

Court of Civil Appeals of Texas. Amarillo.
April 1, 1940.

Rehearing Denied May 20, 1940.

Bradley & Wilson, of Lubbock, and Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

L. D. Ratliff, Jr., and O. B. Ratliff, both of Spur, for appellee.

FOLLEY, Justice.

This is an appeal from a judgment in the sum of $700 in favor of the appellee, H. L. Stanton, against the appellant, Texas Employers' Insurance Association, in a workman's compensation suit filed by the appellee by reason of injuries sustained by him from accidental burns on April 27, 1938, in Dickens County, Texas, while in the employment of James Spencer & Son Construction Company, a partnership of contractors engaged in highway construction work in Dickens, Oldham and Deaf Smith Counties, Texas. At the time of the accident the contractors were subscribers under the workmen's compensation law of Texas and carried two policies of insurance, one in the appellant company, and the other in Casualty Underwriters.

· The cause was submitted to the trial court upon an agreed statement of facts and upon this agreed stipulation the judgment herein was predicated. The material portions of such agreed statement as affecting this appeal were as follows: That both of the insurance companies above mentioned were engaged in the compensation insurance business and duly licensed by the State of Texas to carry on such business; that on or about October 24, 1937, the Texas Employers' Insurance Association issued a policy of compensation insurance to the above contractors for a term of one year covering the location and activities of such company in "Dallas or elsewhere in Texas"; that it "was the intent of said employer firm and said insurer at the time said policy was delivered that the same was to cover all pending business and potentially the future business of said firm in Texas, during the term of said policy"; that about February 18, 1938, the Casualty Underwriters issued and delivered to such contractors a policy of compensation insurance for one year; that the location and activities of the contractors covered by such policy was "Dickens County, Texas, F. A. P. 687–A Highway No. 24, Specific, and elsewhere in Texas"; that the language of each of the above policies was never changed and both were in full force and effect on April 27, 1938, the date of the accident; that in February, 1938, a few days before February 18th, a contract was let by the State Highway officers to such contractors for the construction of a highway in Dickens County subject to Federal Aid and the project was known as "Dickens County, Texas, Federal Aid Project 687–A, Highway No. 24"; that

the language of the policy issued by Casualty Underwriters referred to such highway project in Dickens County; that the contractors and Casualty Underwriters intended that such policy should provide exclusive compensation coverage for the contractors in the Dickens County highway construction work; that the contractors never paid any compensation insurance premiums to the Texas Employers' Insurance Association growing out of the Dickens County job but paid such premiums based upon the job and wages of the employees on the Dickens County project to Casualty Underwriters; that the contractors during the month of April, 1938, also had highway construction work in Oldham and Deaf Smith Counties, Texas and paid to the Texas Employers' Insurance Association all compensation insurance premiums accruing on account of the Oldham and Deaf Smith projects; that the Dickens, Oldham and Deaf Smith jobs were covered by separate contracts and handled by separate crews of employees; that H. L. Stanton was employed only on the Dickens County job and was so employed on April 27, 1938; that he used his own truck at his own instance in traveling to his work and returning home after working hours; that no other use was made of such truck except, during the last few days he worked, his employers, with his consent, used such truck for hauling supplies from one place to another where the work was being performed on the highway, paying Stanton 10¢ per hour for the use of such truck; that during such time the truck had carried around a barrel of gasoline and some dynamite sticks and caps and still had part of such gasoline and explosives on it at quitting time on the day of the accident; that at the close of the day on such occasion the foreman on the job requested Stanton to leave the gasoline and explosives on his truck through the night at Stanton's barn at his home rather than store the same in the contractors' magazine located about a mile from the point where the work for the day ended; that Stanton consented to do so and about 7 P. M. started home with the gasoline and explosives on his truck; that he was paid by the hour for the time actually on the job and after quitting time he received no pay either for himself or his truck; that after leaving the job until he was injured his time and movements were subject to his own will without the supervision of his employers; that after leaving the place

of work he first drove his truck to the town of Dickens, Texas, passing his home on the way, and had some repairs made on the water pump of his truck at Dickens; that about 8 P. M. he drove to his home premises, turned from the highway into his own yard and drove the truck on across his yard uphill to his barn; that when he stopped at his barn he noticed smoke coming from his truck about the cab seat; that he then noticed the gasoline barrel had fallen over and that some of the gasoline had spilled; that he immediately went to said barrel and stood it back on its end but got some gasoline on his hands and trouser legs; that he then began pulling out the cushion of the truck cab to get at the fire underneath and in doing so was burned by fire which caught on his hands and legs where the gasoline had spilled; that Stanton would have made the same trip that evening in his truck from his work to Dickens for the pump repairs and then home had his truck been empty; that he sustained disability from his burns; that he gave notice of his injuries to his employers within legal time, filed claim with the Industrial Accident Board within proper time, and duly appealed from its award to the District Court of Dickens County, Texas, which court has full and legal jurisdiction of the suit; that if he is entitled to recover any compensation against the appellant, Texas Employers' Insurance Association, the amount of such compensation is $700; and that the two policies of insurance herein were in conformity with the Texas standard compensation insurance policy and that each of said policies was duly approved by the Casualty Insurance Commissioner of Texas.

The appellant presents two propositions seeking reversal of the judgment herein: First, that under the above facts the Casualty Underwriters and not the appellant, was liable under the policies; and, secondly, that the appellee was not in the course of his employment at the time of his injuries. In this connection it should be stated that the Casualty Underwriters was not a party to this suit. Whether or not such company is insolvent the record does not disclose, and, as between the parties hereto, such matter is immaterial.

 We think it apparent from the above facts that the contractors herein were engaged in the same general class of business in each of the above named counties. Therefore, the rule applies that such

employers of labor operating under the Workmen's Compensation Act cannot cover part of their employees so employed and leave part of them uncovered. Standard Acc. Ins. Co. v. Barron, Tex.Civ. App., 47 S.W.2d 380, rehearing denied, 122 Tex. 179, 53 S.W.2d 769; Mulkey et al. v. Traders & General Ins. Co., Tex. Civ.App., 93 S.W.2d 582, writ refused. The appellant insists, however, that there is nothing in the Texas compensation law prohibiting an employer from insuring the employees in one county in one company and similar employees in another county in another company, as it contends was done in the instant case. In the Barron case, supra, the observation was made in the opinion of the Court of Civil Appeals that while the law does not afford the employer the power of discrimination against a portion of his employees engaged in the same business "it must be true, as a matter of course, that in carrying out the purpose of the law to protect all his employees he may divide that protection among different insurers, in which case each insurer's liability would be measured by its limited coverage". [47 S.W.2d 382.] Since the Supreme Court refused a writ of error in such case we take it that this language of the Court of Civil Appeals had the approval of the Supreme Court and, therefore, where there are proper limitations in the two policies issued upon separate groups of employees by distinct insurers, the rule would be that each insurer's liability in such case would be restricted to the particular group of employees its policy covered. But we have no such limitations in the two contracts before us. Each of the policies insured the employees of the construction company in a particular county and "elsewhere in Texas". We grant that the record shows that only the Casualty Underwriters received the premiums paid by the contractors upon the employees in Dickens County, which included the appellee, and that the appellant received the premiums on the employees in the other two counties, but the payment of premiums in one county and not in another is not conclusive that premiums were not also due the insurers in the other counties. The further rule is that the failure to pay the premiums which may be due upon a policy is a matter of no importance as between the insurer and the employee but only concerns

the insurer and the employer. Home Life & Accident Co. v. Orchard, Tex.Civ.App., 227 S.W. 705, writ of error refused. Therefore, the payment of premiums herein upon the respective groups in separate companies will afford us nothing except as it might shed some light upon the intentions of the respective parties. It is apparent from the above stipulations that as between the contractors and the Casualty Underwriters the policy of the latter company was intended as exclusive coverage for the Dickens County work. But the Texas Employers' Insurance Association was not a party to such contract and therefore, as far as this policy is concerned, could not share in the intentions of the parties thereto. The policy of the appellant insured the employees of the contractors in Dallas and "elsewhere in Texas", and in the absence of any testimony or stipulation to the contrary this provision of the policy bespeaks for itself the intentions of the parties thereto. In connection with such policy it was agreed by the parties to this suit, as above stated, that it was "the intent of said employer firm and said insurer at the time said policy was delivered that same was to cover all pending business and potentially the future business of said firm in Texas during the term of said policy". This stipulation, we think, in the absence of any stipulation or agreement to the contrary, presents the presumption that the policy was intended to cover the Dickens County employees and tends to establish the fact that double coverage existed herein for such employees.

In connection with its disavowal of liability the appellant relies chiefly upon the case of American Employers' Ins. Co. v. Hookfin et al., Tex.Civ.App., 33 S.W.2d 801, writ refused. We think such case is distinguishable from the instant case in one very important respect. The appellant therein, the American Employers' Insurance Company, was apparently seeking to shift one-half of the liability upon the appellee therein, the Union Indemnity Company, each of which companies had issued policies to the employer. The American Employers' Insurance Company's policy apparently covered only Harris County, the place of the liability. The Union Indemnity Company's policy covered employees in "Galveston, and elsewhere in the State of Texas". The testimony therein showed that regardless of the provision in the latter policy as to "Galveston, and elsewhere in the State of Texas" it was not intended by the parties to such contract that it should cover employees in Harris County, but on the contrary the court expressly found upon the oral testimony offered that it was the intention of the parties thereto that it should not cover employees in Harris County. No such situation exists in the case before us. There is not only an absence of evidence or stipulation herein to the effect that it was not the intention of the contractors and the Texas Employers' Insurance Association to cover the employees in Dickens County by the latter's policy, but, on the contrary, we think the above facts support the trial court's implied finding that it was the intention of the employers and of the appellant that the latter's policy should cover the Dickens County work. Had not the second policy been issued we doubt that the appellant or anyone concerned would have ever questioned the fact that the first policy covered the Dickens County employees. The appellant was not a party to the second contract and after its issuance there was no endorsement placed upon the first policy limiting the liability of the first insurer in keeping with appellant's present contention nor was there an approval of such a plan by the Insurance Commission of Texas. Article 4913, R.C.S. Under such circumstances we think the question of double insurance has arisen in this case which issue has been resolved against the appellant upon sufficient evidence. Since the Casualty Underwriters is not a party to this suit it is a matter of no concern that, had such company been a party, under proper pleadings the appellant would have been entitled to contribution from it. Under the record before us it is our opinion that the policy of the appellant included the liability herein and the appellant's contention in this respect should be overruled. Texas Employers' Ins. Ass'n v. Jones et al., Tex.Civ.App., 70 S.W.2d 1014, writ dismissed.

It is also our opinion that the above stipulated facts are sufficient to support the trial court's implied finding that the appellee at the time of the accident was engaged in the due course of his employment. The 1937 amendment to section 1 of article 8309, Vernon's Annotated Civil Statutes, has enlarged the statutory definition of the word "em-

ployee" by adding, among other things, this provision: "provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions". At the time of his injury the appellee was following the instructions of his foreman who directed him to store the gasoline and explosives on his truck in his barn for the night. The fact that the record shows the employers maintained a magazine about a mile from the scene of the work indicates that it was necessary to keep the explosives and gasoline in a safe and dry place and in following the instructions in this respect we think the appellee was engaged in the furtherance of his master's business. Such conditions at least presented an issue of fact which has been resolved against the appellant by the judgment of the trial court. This assignment is therefore overruled. Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128; Maryland Casualty Co. v. Long. Tex.Civ.App., 9 S.W.2d 458; Maryland Casualty Co. v. Kent et al., Tex.Com.App., 3 S.W.2d 414; Federal Underwriters Exchange v. Lehers et ux., Tex.Com.App., 120 S.W.2d 791; Texas Employers Ins. Ass'n v. Schwarz et ux., Tex. Civ.App., 107 S.W.2d 666, and authorities therein cited.

The judgment is affirmed.