**FEDERAL UNDERWRITERS EXCHANGE**
**v. MORTON.**

No. 4004.

Court of Civil Appeals of Texas. Beaumont.

May 21, 1942.

Rehearing Denied May 27, 1942.

B. L. Collins, of Lufkin, and Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Musslewhite & Fenley, of Lufkin, for appellee.

WALKER, Chief Justice.

This is a workman's compensation case. On the allegations of the petition of appellee, Jim Morton, he was the employee, appellant, Federal Underwriters Exchange, the compensation insurance carrier, and Nacogdoches County Lumber Company, Inc., the employer. The issues made by appellant by its answers are brought forward in its propositions. On the verdict of the jury, finding all controverted issues in appellee's favor, judgment was for him for total, permanent disability, with compensation for 401 weeks on the average weekly wage of $15, to be paid in the lump sum of $5,153.57. Appellant has duly perfected its appeal.

We overrule the proposition that, on the undisputed evidence, appellee was an independent contractor of Nacogdoches County Lumber Company, Inc. On that issue we make the following summary of the evidence. At the time appellee was injured he was hauling logs for Nacogdoches County Lumber Company, Inc. from the woods where the logs were cut to the company's mill, at $4.50 per thousand feet. The company owned the timber. Appellee paid his helper $2 per day, and paid all the expenses of operating his truck.

He operated his truck under the following instructions from the company: (a) The manner of operating his truck, (b) the route to take in hauling the logs, and (c) the manner of loading his logs and where, and how to unload them. He was charged the doctor's fee of $2 per month just as the other employees were charged this fee. He was required to attend the safety meetings held by the company for the instructions of its other employees. He was required to haul feed for the company's teams, to haul the company men back and forth to work in the woods, to haul lumber for bridges and runways for the company; to supervise for the company the cutting of its timber and to see that none of it was wasted. He was required to supervise the repair of fences broken down in cutting the timber. He was instructed not to pick up hitchhikers. He was instructed as to his speed on the highway, the care of his windshield wiper and his lights and brakes. The company exercised control over his work to the same extent that it controlled the work of the men who drove its trucks by the hour.

The company could discharge him at its will, and he could leave his contract at his will. He was paid in the same manner, and at the same time and place, as all other employees. His account in the company's store was carried in the same manner as the accounts of the company's employees. He was assigned no specific timber to haul, but hauled the timber as directed by the company. He discussed his need of a helper with the company before he put the helper to work, and obtained its permission to employ the helper. He consulted with the company about the purchase of his truck used in the hauling of the logs. When appellee was injured he was carried to the company's doctor, who called the company's office for instructions before he was carried to the hospital for treatment.

Under the recent opinion of our Supreme Court in Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359, the evidence raised the issue that appellee was

an employee and not an independent contractor. That appellee furnished his own equipment and was paid by the thousand feet for logs hauled, and had some discretion as to his hours of work, was but evidentiary. Maryland Casualty Co. v. Kent, Tex.Com.App. 3 S.W.2d 414.

■ The court did not err in refusing to submit to the jury its requested issue whether Nacogdoches County Lumber Company, Inc. had "the right to control the manner, means and method" used by appellee in hauling the logs. This issue was merely evidentiary.

■ Special issue No. 3 inquired whether appellee had sustained an injury to his right leg above the knee, as the result of being struck by the log. Special issue No. 29 inquired whether appellee's injury to the right leg below the knee had effected or involved the entire right leg, including the foot. Special issue No. 11 inquired whether appellee had sustained total incapacity as a result of his injury.

We give special issue No. 30: "If you have answered either Special Issues Nos. 3 or 29, 'Yes,' but you have answered Special Issue No. 11, 'No,' then you will answer the following issue:

"Special Issue No. 30: Do you find from a preponderance of the evidence that plaintiff, Jim Morton, has sustained the loss of use of his entire right leg, including the foot thereof, in any degree, as a natural result of such injury to his right leg, if any you have found in your answers to Special Issues Nos. 2 and 3?

"Answer 'Yes' or 'No.'"

Appellant assigns error against the conditional submission of special issue No. 30. This issue did not submit appellant's theory of defense that appellee's incapacity was confined solely to the loss of the use of his right leg. Therefore, the conditional submission in no way harmed appellant. Appellant's theory of defense that appellee's incapacity and injuries were confined solely to his right leg below the knee were unconditionally and affirmatively submitted to the jury by other issues. Had the jury answered issue No. 30 that appellee had sustained the loss of the use of his entire right leg, including the foot, the answer would not have been in conflict with the findings on the issues of total and permanent incapacity. Such an answer would not have been determinative in appellant's favor. On the other hand,

had the jury given a negative answer to issue No. 30, the answer would not have been in conflict with the findings on total and permanent incapacity. Lumbermen's Reciprocal Ass'n. v. Anders, Tex.Civ.App.; 292 S.W. 265.

■ We give special issue No. 34: "If you have answered Special Issue No. 30 'Yes,' and only in that event, then you will answer the following issue:

"Special Issue No. 34: Do you find from a preponderance of the evidence that such loss of the use, if any, of plaintiff's entire right leg, including the foot thereof, is not confined solely to his right foot, as that term is herein defined to you?

"Answer 'Yes' or 'No.'"

The conditional submission of this issue was not error, for the same reason that the conditional submission of issue No. 30 was not error.

We give special issue No. 35: "If you have answered Special Issue No. 30 'No,' and only in that event, then you will answer the following issue:

"Special Issue No. 35: Do you find from a preponderance of the evidence that plaintiff, Jim Morton, has sustained the loss of the use of his right foot, as that term is herein defined to you, in any degree, as a natural result of such injury to his right leg below the knee thereof, if any you have so found?

"Answer 'Yes' or 'No.'"

For the reasons stated above in discussing issue No. 30, we overrule appellant's point against the conditional submission of this issue.

■ The court did not err in receiving in evidence the certified copy of the notice filed with the Industrial Accident Board that Nacogdoches County Lumber Company, Inc. had become a subscriber under the Workmen's Compensation Act. Section 5 of Article 8307, R.C.S.1925, Vernon's Ann. Civ. St. art. 8307 § 5, makes it the duty of the Industrial Accident Board, upon request of any interested party, to furnish him a "properly" certified copy of this notice which, in the language of the statute, "shall be admissible in evidence in any court in this State upon trial of such claim therein pending and shall be prima facie proof of all facts stated in such notice in the trial of said cause unless same is denied under oath by the opposing party therein." The language of the statute does

not make the certified copy inadmissible where the denial "under oath" is filed, but simply takes away its prima facie effect; as against the denial the notice is simply evidence to be weighed by the jury. Appellant has cited us no case supporting its proposition that, after the denial under oath is filed, the certified copy is inadmissible.

■ But it is our conclusion that appellant did not deny under oath that it had issued to Nacogdoches County Lumber Company, Inc. a policy of workmen's compensation insurance. Appellant simply denied under oath that it had issued such a policy "to Nacogdoches County Lumber Company, Inc., or to any other person covering and insuring the plaintiff herein as an employee of Nacogdoches County Lumber Company, Inc., or any other person; all of which facts this defendant stands ready to verify." This affidavit did nothing more than to put in issue the nature of appellee's employment, whether he hauled the logs as an employee or as an independent contractor. There is no suggestion in the affidavit that Nacogdoches County Lumber Company, Inc. was not a subscriber—that it did not hold appellant's policy of workmen's compensation insurance as stated in the "notice" filed with the Industrial Accident Board. Therefore, the notice was admissible under Sec. 5 of Art. 8307.

■ However, if it be conceded that the certified copy of the notice was not admissible its reception in evidence was harmless error, since it was shown by other evidence, as a matter of law, that appellant had in fact issued to Nacogdoches County Lumber Company a policy of workmen's compensation insurance, which was in effect at the time appellee was injured. We give on this issue the testimony of Mr. Jesse Summers, secretary of Nacogdoches County Lumber Company, Inc.:

"Q. You knew you had workmen's compensation insurance during the year 1940 on your employees? A. I understood that.

"Q. And with Federal Underwriters Exchange? A. I never did see the policy.

"Q. You knew you had it? A. I couldn't swear it.

"Q. You want to be fair with Mr. Morton and with this jury? A. Yes.

"Q. As an officer of that company, you knew you had workmen's compensation insurance? A. At times, yes, sir. .

"Q. You knew it on August 19, 1940? A. Yes, sir.

"Q. And you knew you had it with Federal Underwriters Exchange? A. Yes."

■ The court did not err in refusing to permit Mr. Summers to testify that his company had not paid any insurance premium to appellant, based upon the compensation paid by it to appellee for hauling logs. Failure to pay this premium, as between appellant and appellee, was an immaterial issue. Home Life & Accident Co. v. Orchard, Tex.Civ.App., 227 S.W. 705; Texas Employers Ins. Ass'n v. Jones, Tex. Civ.App., 70 S.W.2d 1014; Texas Employers Ins. Ass'n v. Stanton, Tex.Civ. App., 140 S.W.2d 337; Standard Accident Ins. Co. v. Barron, Tex.Civ.App., 47 S.W. 2d 380; Mulkey v. Traders & Gen. Ins. Co., Tex.Civ.App., 93 S.W.2d 582.

The judgment of the lower court is affirmed.