**TEXAS EMPLOYERS' INS. ASS'N v. HARPER.**

**No. 14521.**

Court of Civil Appeals of Texas. Dallas.

May 23, 1952.

Rehearing Denied June 20, 1952.

678

Burford, Ryburn, Hincks & Ford and Howard Jensen, Dallas, for appellant.

B. B. Hemphill and W. R. Hemphill, Dallas, for appellee.

CRAMER, Justice.

This is a duly perfected appeal from a judgment of a District Court, on appeal from the Industrial Accident Board, awarding appellee death benefits as a beneficiary of her deceased husband, Jesse Harper, under our Workmen's Compensation Act. Appellant, herein called "Association," defended in the trial court on the ground that the deceased was not an employee of its subscriber, Eagle Pitcher Company, herein called "EPC," but was an employee of B. H. Harbison, an independent contractor.

It is undisputed that EPC was a subscriber, with the Association as its insurer under the Act, and operated a large plant in the industrial district of the Dallas area; that it made a contract with Harbison (financially a poor man) to paint certain high stacks at its plant; that Harbison was a steeplejack painter and contractor; that he was not a regular employee of EPC; his contract to paint the stacks in question was oral, and was for a consideration of $150 each, for the three sets of three double stacks. Harbison employed Harper, deceased, and two other men to do the high work on the stacks under his direction from the ground; EPC furnished the paint used, Harbison owned and furnished all steeplejack equipment and rigging used by Harper and the other painters on the job in the painting of the stacks. Harbison had theretofore made similar contracts with EPC for the same kind of work; Harbison was the only person who put the three workmen on the job, or who set their pay and delivered their wages to them. Each of Harbison's employees was required by EPC, before they were permitted to work on its premises, to submit to a physical examination. The medical report by EPC's doctor was on a printed form which had thereon the word "Employer," and in the space following such word, the doctor making the examination wrote in the name, "Eagle Pitcher Co." The doctor's report on the three employees of Harbison was that they were physically fit. However, the report on Harbison was that he was in such physical condition that he should not go above ground; and EPC made it a condition of the contract that he should not go above ground. Harbison, on the job, directed the work from the ground.

The jury found, material here, in answer to special issues, that: (1) Harper was an employee of EPC on July 19, .1949; (2) that the fall of Harper occurred in the course of his employment with EPC; (3) that the fall naturally resulted in his death; (7) that Harbison was not an independent contractor; (8) that Harper was not an employee of B. H. Harbison on the occasion in question. Judgment for Mrs. Harper was entered on such verdict.

Appellant's first two points complain of the trial court's overruling, (1) its motion for instructed verdict and motion for judgment n. o. v.; (2) and its motion for new trial; asserting that the evidence was insufficient to support either the verdict or the judgment.

Appellee points out the following evidence which she asserts raised the issues submitted to the jury, to wit: (a) EPC required Harbison and each person employed by him to take a physical examination by its doctor before going on the job; (b) EPC's workmen's compensation policy for the year contained an estimated advance premium based on stack-painting; (c) Harbison was a poor man; (d) that after EPC's doctor made an unfavorable report on Harbison, EPC made it a condition of the contract that Harbison not go above the ground on the job; (e) evidence that EPC furnished the paint on the job; (f) that the form on which the doctor reported the results of his examination of Harbison and the three men placed on the job by him, which included Harper, had printed thereon the word, "Employer," and the words

"Eagle Pitcher" written in thereafter, which report was accepted and agreed on without objection by EPC before the men went on the job; and (g) that the evidence as a whole showed the contract was let to Harbison with the purpose and intention by EPC of avoiding the liability imposed by the Workmen's Compensation Act, all as is condemned by Art. 8307, sec. 6, R.C.S. 1925.

In view of appellee's express reliance on the above, we will consider each of such assertions separately and collectively, and thereafter will consider the record as a whole, to determine whether the evidence raised the issues of fact found by the jury and material to appellee's recovery here.

The record shows that EPC, in its businesses, uses a large quantity of lead in certain of its processes and that there are individuals who have a reaction therefrom at times, when around lead; that on occasions any unusual ailment will, at times, be laid to lead. This, together with the fact that lead is not in itself poison, but can, on occasions, react on the nervous system and give trouble, makes it necessary for EPC to require physical examinations of all presons entering that part of its plant where lead is being used. The evidence shows that Harbison himself at one time claimed an arthritic condition was caused by lead, and the doctors thereafter established his ailment only as arthritis,—and not the result of being around lead.

Under such record, the requirement of a physical examination would not make a jury question as to whether Harbison, and/or Harper, deceased, were employees of EPC. And the doctor's written words, "Eagle Pitcher," after the printed word, "Employer," in his report, being fully explained, did not make a question of fact on the issues of independent contractor, or employee, relationship. Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97; Latta v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 243 S.W.2d 949, ref. n.r.e. The fact that the workmen's compensation policy contained, in the estimated amount on which the year's advance deposit premi-

um was based, a sum which EPC anticipated would be paid for painting the stacks in question, could not by itself, or collectively with other facts, affect the result in this case, and was not admissible on the main issue of whether the contract made by EPC created the relationship of employer-independent contractor, or of employer-employee. The payment, or nonpayment, of premiums is not material on such issue. It is the legal effect of the oral agreement between EPC and Harbison, which controls. Service Mutual Ins. Co. v. Blain, 140 Tex. 541, 168 S.W.2d 854; Federal Underwriters Exchange v. Morton, Tex.Civ.App., 167 S.W.2d 267, ref. w.o.m. The evidence that Harbison was a poor man of itself was not controlling. However, such evidence was admissible and could, under certain circumstances, be taken with other sufficient evidence in determining whether there was a sufficient showing to make a jury issue.

Appellee cites Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399, 401. Such case, while it holds "The alleged contractor, John Davis, was a negro, who was irresponsible financially, which, we think, is a circumstance to be considered by the jury in connection with the other facts", the record also shows that the claimed independent contractor himself, in his testimony considered himself a foreman, not an independent contractor, and also showed the actual exercise of control by the employer. This, with the other facts there, clearly distinguishes that case from this one. The case of Simonton v. Perry, Tex. Civ.App., 62 S.W. 1090, is more nearly in point. See also Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522–525.

The case here is not based on negligence in the hiring of an independent contractor. See 4 Tex.Law Review 107.

The evidence shows that the doctor's report on Harbison disclosed that he could not safely go on "high work." Harbison's evidence thereon, in part, was:

"Q. Who was it that told you that you couldn't work on 'high work'? A. Doctor Laugenour.

"Q. What did the company say about that? A. The company said that I had been turned down and that I couldn't work—go up on that 'high work.'

"Q. Which member of the company was that? A. Mr. Bentley—

"Q. Bentley Murph? A. Yes.

"Q. When did he say that to you? A. When I came back from the physical examination—from the doctor.

"Q. How did he know that you had been turned down? Do you know? A. Well, I don't remember whether I told him or whether Doctor Laugenour told him; I am not sure. It has been a long time.

"Q. That is all."

Such evidence could not change the relationship of the parties as employer and independent contractor under the undisputed oral agreement between EPC and Harbison.

■ The evidence that EPC furnished the paint to be used on the job did not change the relationship of the parties. The evidence on this point is to the effect that the Company was experimenting to a certain extent and used different paint on each set of stacks, and under Harbison's original contract they were, because of such facts, to furnish the paint on each set of stacks. Such evidence is only a circumstance, not sufficient in itself, or in connection with the other facts in this record, to make a jury issue.

The material evidence on the question of the relationship of the parties was the right of control, not Harbison's financial ability. Harbison owned all the equipment necessary to do the work contracted to be done by him; he also had the necessary past experience in such work. The question as to who should furnish the paint only pertained to, and could influence only, the contract price, to be figured with or without the necessary paint, and did not, and could not, affect the controlling issue of who had the right of control of the details in the actual performance of the work on the job, which the evidence shows, with-

out dispute, was "a line within itself * * special work."

Appellee also sets out that the form on which the medical examination of Harbison and his steeplejack painters was reported by the doctor to EPC, had printed thereon the word "Employer'" and that the doctor's secretary wrote thereafter the words "Eagle Pitcher," and that such report was delivered to EPC, was accepted and acted on by them, without change therein, before the men went to work. This was a circumstance to be considered by the jury if sufficient other facts, not present here, were in evidence. It did not raise the issue of an employer-employee relationship between the parties here. Odle v. Charcoal, etc., 217 Mich. 469, 187 N.W. 243.

■ Appellee also asserts that the evidence as a whole shows the contract in question was let to Harbison with the purpose and intent to avoid the liability imposed upon EPC by the Workmen's Compensation Act, as condemned by sec. 6, Art. 8307, R.C.S. While the statute only covers subcontractors, and not independent contractors, still if we assume that it does apply to independent contractors, there is still no evidence raising the issue as to intent to avoid the liability imposed under the Workmen's Compensation Act sufficient to justify the submission of such issue to the jury. United States Fidelity & Guaranty Co. v. Hall, Tex.Civ.App., 224 S.W.2d 268, error dismissed; Fort Worth Lloyds v. Mills, Tex.Civ.App., 213 S.W.2d 565, error ref. n. r. e.

■ Considering all the above circumstances together with the record as a whole, we still cannot say a jury question was raised by the evidence. The relationship between EPC and Harbison was, as a matter of law, that of employer-independent contractor. The legal distinction between such relationship and that of an employer-employee relationship is plain. The material question in each case is, who has the right under the agreement to direct the details of what shall be done and how and when it shall be done; in other words, who has the right to the general control of the details of the work necessary to accomplish

the result contemplated under the contract? An independent contractor is one who undertakes to do a specific piece or quantity of work, free of control of the employer as respects the manner in which the details of the work are to be executed; but representing the employer only as to the result. Liberty Mutual Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787; Gulf Refining Co. v. Rogers, Tex.Civ.App., 57 S.W.2d 183; Brasher v. Carnation Co. of Dallas, Tex.Civ.App., 92 S.W.2d 573; American Nat. Ins. Co. v. Denke, Tex.Civ.App., 65 S.W.2d 522; Blankenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W.2d 366; McCombs v. Stewart, Tex.Civ.App., 117 S.W. 2d 869; Moore & Savage v. Kopplin, Tex. Civ.App., 135 S.W. 1033; Drennon v. Patton, etc., Tex.Civ.App., 109 S.W. 218; Texas & N. O. Ry. Co. v. Rittimann, Tex.Civ. App., 87 S.W.2d 745; Huber Petroleum Co. v. Yake, Tex.Civ.App., 121 S.W.2d 670; Allen v. Republic Bldg. Co., Tex.Civ. App., 84 S.W.2d 506; Tanner v. Drake, Tex.Civ.App., 47 S.W.2d 452; Aetna Life Ins. Co. v. Culvahouse, Tex.Civ.App., 10 S.W.2d 803. See, also, Jensen v. Barbour, 15 Mont. 582, 39 P. 906, where the authorities generally are reviewed.

It follows from the above that only if the contract is one where the right of control of the details of the work to be performed for the employer is in the employer, that the person performing the work is not an independent contractor, but an employee.

The evidence here fails to raise an issue for the jury as to the relationship of the parties, but establishes as a matter of law that the employer-independent contractor relationship existed between EPC and Harbison. We therefore sustain points 1 and 2. In view of the sustaining of points 1 and 2, the other assignments become immaterial to a disposition of this case, and are therefore not further considered.

The judgment below setting aside the Board's award is affirmed, and the judgment allowing death benefits is reversed and here rendered that appellee take nothing by this suit.

In part affirmed and in part reversed and rendered.