PD-0966-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/27/2015 12:00:00 AM
Accepted 7/28/2015 2:28:38 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-____-15

*Jonathan Baker, Appellant,*
*v.*
*State of Texas, Appellee.*

**On Discretionary Review from No. 12-14-00185-CR**
**Twelfth Court of Appeals**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Cause Number F13-00422**

## Petition for Discretionary Review

**Michael Mowla**
**445 E. FM 1382 #3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

July 28, 2015

ABEL ACOSTA, CLERK

*Oral Argument Requested*

## I. Identity of Parties, Counsel, and Judges

Jonathan Baker, Appellant

Michael Mowla, attorney for Appellant on appeal and on discretionary review

Julie Doucet, Attorney for Appellant at Trial

Stephen Duplantis, Attorney for Appellant at Trial

State of Texas, Appellee

Susan Hawk, Dallas County District Attorney, Attorney for Appellee

Lori Ordiway, Dallas County Assistant District Attorney, Attorney for Appellee

Lisa Smith, Dallas County Assistant District Attorney, Attorney for Appellee

Anna Kubalak, Dallas County Assistant District Attorney, Attorney for Appellee

Reynie Tinajero, Dallas County Assistant District Attorney, Attorney for State of Texas

Shawnkeedra Houston-Martin, Dallas County Assistant District Attorney, Attorney for State of Texas

Hon. Rick Magnis, Presiding Judge of the 283rd Judicial District Court

## II. Table of Contents

I.      Identity of Parties, Counsel, and Judges.........................................................2

II.     Table of Contents..................................................................................................3

III.    Table of Authorities ............................................................................................5

IV.     Appendix Index ...................................................................................................8

V.      Statement Regarding Oral Argument ..................................................................9

VI.     Statement of the Case and Procedural History ..................................................10

VII.    Grounds for Review.............................................................................................13

VIII.   Argument .............................................................................................................14

    **1.** Ground for Review One: The court of appeals erred when it found that the evidence is legally sufficient to show that Appellant intentionally or knowingly caused the death of the CW because although prior to being taken to the hospital by Appellant the CW was last in the care of Appellant, the State failed to prove the manner and means by which the injury occurred. A fatal closed-head injury to a child while under the care of a defendant is not all that the State should have to prove beyond a reasonable doubt to show that the CW's death was caused by the defendant's conduct if the manner and means by which the injury occurred is not proved. ........................................14

       **i.**   Introduction .......................................................................................14

       **ii.**  There are many examples of where a young child has been killed or injured while believed to be in the custody of a sole adult caretaker, and the manner and means may not be clear. .......................................................................................16

       **iii.** Why is the State not required to prove beyond a reasonable doubt what happened and how the force was used?...................................................................................................18

       **iv.**  The State cannot meet the requirements of Texas Penal Code § 6.02(a) if the State fails to identify the conduct alleged to have caused the injury or death ..........................22

IX.     Conclusion and Prayer.........................................................................................30

X.      Certificate of Service ..........................................................................................31

3

XI.    Certificate of Compliance with Tex. Rule App. Proc. 9.4 .............................32

## III. Table of Authorities

**Cases**

*Allen v. State*, 249 S.W.2d 680 (Tex. App. Austin 2008, *no pet.*)...........................21

*Baker v. State*, 12-14-00185-CR, 2015 Tex. App. LEXIS 6642 (Tex. App. Tyler, June 30, 2015) (memorandum opinion).............................. 10, 12

*Bearnth v. State*, 361 S.W.3d 135 (Tex. App. Houston [1st Dist.] 2011, *pet. ref.*)...............................................................................16

*Castro v. State*, 2015 Tex. App. LEXIS 2399, 03-12-00730-CR (Tex. App. Austin Mar. 13, 2015, *pet. filed*) (not designated for publication) ...............................................................................18

*Crisp v. State*, No. 04-09-00580-CR (Tex. App. San Antonio Mar. 16, 2011, *pet. ref.*) (not designated for publication)..............................18

*Duren v. State*, 87 S.W.3d 719 (Tex. App. Texarkana 2002, *pet. struck*) ...............................................................................17

*Ex parte Henderson*, 384 S.W.3d 833 (Tex. Crim. App. 2012) ...............................17

*Garcia v. State*, 16 S.W.3d 401 (Tex. App. El Paso 2000, *pet. ref.*).......................17

*Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).........................................19

*Goka v. State*, 657 S.W.2d 20 (Tex. App. Houston [1st Dist.] 1983, *pet. ref.*)...............................................................................28

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997) ...........................21

*Hasel v. State*, 12-14-00101-CR, 2015 Tex. App. LEXIS 6091 (Tex. App. Tyler June 17, 2015, *no pet. hist.*) (memorandum opinion) (not designated for publication)....................................................22

*Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997) ...............................17

*Herrera v. State*, 367 S.W.3d 762 (Tex. App. Houston [14th Dist.] 2012, *no pet.*) ...............................................................................16

*Herrin v. State*, 125 S.W.3d 436 (Tex. Crim. App. 2002)......................................29

*Jackson v. Virginia*, 443 U.S. 307 (1979)....................................................... 20, 22

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012) ...................................28

*Johnson v. State*, 673 S.W.2d 190 (Tex. Crim. App. 1984) ...................................19

*Lee v. State*, 214 S.W.2d 619 (Tex. Crim. App. 1948)...........................................21

*Lewis v. State*, No. 05-12-00844-CR (Tex. App. Dallas Jan. 6, 2014, *pet. ref.*) (memorandum opinion) (not designated for publication) ..................................................................................18

*Louis v. State*, 393 S.W.3d 246 (Tex. Crim. App. 2013)..........................................21

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724 (Tex. 2003)......................................21

*Martin v. State*, 246 S.W.3d 246 (Tex. App. Houston [14th Dist.] 2007, *no pet.*) ....................................................................................15

*Miller v. State*, 457 S.W.3d 919 (Tex. Crim. App. 2015)...........................................19

*Montgomery v. State*, 198 S.W.3d 67 (Tex. App. Fort Worth 2006, *pet. ref.*).....................................................................................23

*Munoz v. State*, 2009 Tex. App. LEXIS 6475, 08-07-00325-CR (Tex. App. El Paso 2009, *no pet.*) (not designated for publication) ......................16

*Narvaiz v. State*, 840 S.W.2d 415 (Tex. Crim. App. 1992)....................................29

*Patrick v. State*, 906 S.W.2d 481 (Tex. Crim. App. 1995)......................................16

*Roberson v. State*, 2015 Tex. App. LEXIS 4735, 05-13-01416-CR (Tex. App. Dallas May 8, 2015, *no pet.*) (memorandum opinion, not designated for publication)..........................................................18

*Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008) ....................................22

*Stobaugh v. State*, 421 S.W.3d 787 (Tex. App. Fort Worth 2014, *pet. ref.*)..................................................................................24

*Urbano v. State*, 837 S.W.2d 114 (Tex. Crim. App. 1992) ....................................29

*Williams v. State*, 294 S.W.3d 674 (Tex. App. Houston [1st Dist.] 2009, *pet. ref.*)..................................................................17

*Williamson v. State*, 244 S.W.2d 202 (Tex. Crim. App. 1951) ............................21

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)....................................29

**Statutes**

Tex. Pen. Code § 19.02 (2011) ..........................................................................11

Tex. Pen. Code § 19.03 (2011) ..........................................................................11

Tex. Pen. Code § 6.02 (2011) ............................................................................22

**Rules**

Tex. Rule App. Proc. 66.3 (2015)......................................................................30

Tex. Rule App. Proc. 68.11 (2015).....................................................................31

6

Tex. Rule App. Proc. 68.4 (2015) ........................................................ 9, 13

Tex. Rule App. Proc. 9.4 (2015) ...........................................................31

Tex. Rule App. Proc. 9.5 (2015) ...........................................................31

## IV. Appendix Index

*Baker v. State*, 12-14-00185-CR, 2015 Tex. App. LEXIS 6642 (Tex. App. Tyler, June 30, 2015) (memorandum opinion)

## V. Statement Regarding Oral Argument

Should this Court grant this petition, Appellant requests oral argument. *See* Tex. Rule App. Proc. 68.4(c) (2015). Appellant believes that the facts and legal arguments are adequately presented in this petition. However, the issue presented in this case represents a recurring pattern that characterizes prosecutions in which a young child is killed or injured while believed to be in the custody of a sole adult caretaker. Therefore, should this Court determine that its decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument.

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellant Jonathan Baker respectfully submits this petition for discretionary review:

**VI. Statement of the Case and Procedural History**

This petition requests that this Court review the *Memorandum Opinion* and judgment of the Twelfth Court of Appeals in *Baker v. State*, 12-14-00185-CR, 2015 Tex. App. LEXIS 6642 (Tex. App. Tyler, June 30, 2015) (memorandum opinion), in which the court of appeals affirmed Appellant's conviction for Capital Murder. In this petition, Appellant will argue that the court of appeals erred when it found that the evidence is legally sufficient to show that Appellant intentionally or knowingly caused the death of the CW because although prior to being taken to the hospital by Appellant the CW was last in the care of Appellant, the State failed to prove the manner and means by which the injury occurred. Appellant will further argue that a fatal closed-head injury to a child while under the care of a defendant is not all that the State should have to prove beyond a reasonable doubt to show that the CW's death was caused by the defendant's conduct if the manner and means by which the injury occurred is not proved.

This petition arises out of an appeal of a *Judgment of Conviction by Jury* entered and sentence imposed by the 283rd Judicial District Court of Dallas

County, Texas. (CR, 48-50).[1] In an indictment dated July 19, 2013, the State alleged that Appellant committed Capital Murder under Texas Penal Code § 19.03(a)(8) as follows: on or about December 8, 2011, in Dallas County, Texas, Appellant intentionally and knowingly [under Tex. Pen. Code § 19.02(b)(1)] caused the death of Joniah Baker (complaining witness, or "CW"), a person under ten years of age, by striking the CW with Appellant's hand, a deadly weapon, and by striking the CW with and against an unknown object, a deadly weapon, the exact nature and description of which is unknown and unknowable to the grand jury. (CR, 8); *See* Tex. Pen. Code § 19.03(a)(8) (2011); *See also* Tex. Pen. Code § 19.02(b)(1) (2011). The indictment further alleged that prior to the commission of this offense, on February 14, 2006, Appellant was finally convicted of the felony offense of Escape in Criminal District Court Number 4, in cause number F04-21566. (CR, 8).

Appellant pleaded "not guilty," and a trial was had before a jury. (RR3, 13-14).

On June 3, 2014, Appellant was convicted of Capital Murder under Texas Penal Code § 19.03(a)(8). (RR7, 69). On the same day, Appellant was sentenced to life in the Texas Department of Criminal Justice without the possibility of

---

[1] The Record on Appeal consists of the Clerk's Record, which is one volume, and the Reporter's Record, which is seven volumes. The Clerk's Record is cited as "CR" and followed by the page number, and the Reporter's Record is cited as "RR" followed by the volume number and page number.

parole. (RR7, 70; CR, 48-50). Appellant was not fined, and was ordered to pay costs of court of $264.00. (CR, 48).

Appellant appealed the judgment of conviction and sentence to the Twelfth Court of Appeals. On June 30, 2015, the Court of Appeals affirmed the judgment of conviction and sentence. *See Baker v. State,* 12-14-00185-CR, 2015 Tex. App. LEXIS 6642 (Tex. App. Tyler, June 30, 2015) (memorandum opinion). This petition for discretionary review follows.

## VII. Grounds for Review

**Ground for Review One:** The court of appeals erred when it found that the evidence is legally sufficient to show that Appellant intentionally or knowingly caused the death of the CW because although prior to being taken to the hospital by Appellant the CW was last in the care of Appellant, the State failed to prove the manner and means by which the injury occurred. A fatal closed-head injury to a child while under the care of a defendant is not all that the State should have to prove beyond a reasonable doubt to show that the CW's death was caused by the defendant's conduct if the manner and means by which the injury occurred is not proved.

Because the ground for review involves a matter of legal sufficiency, the entire record on appeal must be reviewed. Appellant provides a full summary of the facts over a span of 20 pages in the Appellant's Brief (see pages 14-34), and respectfully directs this Court's attention to those facts. *See* Tex. Rule App. Proc. 68.4(f) (2015).

## VIII. Argument

1. <u>Ground for Review One</u>: **The court of appeals erred when it found that the evidence is legally sufficient to show that Appellant intentionally or knowingly caused the death of the CW because although prior to being taken to the hospital by Appellant the CW was last in the care of Appellant, the State failed to prove the manner and means by which the injury occurred. A fatal closed-head injury to a child while under the care of a defendant is not all that the State should have to prove beyond a reasonable doubt to show that the CW's death was caused by the defendant's conduct if the manner and means by which the injury occurred is not proved.**

### i. Introduction

This case presents a recurring pattern that characterizes prosecutions where a young child has been killed or injured while believed to be in the custody of a sole adult caretaker. This pattern consists of the following:

(1) the child suffers injuries that are deemed to unlikely have been self-inflicted or the result of an accident;

(2) the approximate time and location where the injuries occurred is alleged through expert testimony, with a short "window of opportunity" assigned by the experts;

(3) it appears that the injuries are the result of some traumatic force, perhaps repeated, but the exact measure or type of force or instruments used cannot be identified. As to this factor, although a medical expert often uses the word "intentional" to describe the manner in which the force was applied, often "non-

14

accidental" is meant. *See Martin v. State*, 246 S.W.3d 246, 260 (Tex. App. Houston [14th Dist.] 2007, *no pet.*);

(4) the defendant does not disclaim being solely responsible for the care of the child right before the child is discovered to appear "not right," and offers an explanation about the injuries that seems insufficient or incomplete on its face, and which may change over time. As a result, inconsistencies or variances give rise to doubt about the veracity of the explanation, especially when experts provide opinions about likely causes for the injuries. Further, while the explanation may suggest the injuries started at another time or were inflicted by another person, or the damage progressed in manner different than theorized by the State's expert, no alibi defense is possible; and

(5) there may be evidence of additional injuries not attributed as causing the result for which the defendant is being placed on trial, but still considered to show that the defendant had a propensity for improper or abusive conduct toward the child or other children.

Many cases involving child-victims are tried on indictments that allege only that "something happened" and that the child died. The State succeeds in obtaining a conviction by: (1) offering evidence that the defendant was "there"; and (2) asking the jury to infer the defendant **must** have been responsible for the death because that is the only "plausible explanation" for its occurrence.

The State also often succeeds by presenting evidence of a brutal mechanism of death inflicted, which furthers the State's ability to prove beyond a reasonable doubt without accounting for intent or knowledge on the part of the defendant. *See, e.g., Patrick v. State*, 906 S.W.2d 481, 487-488 (Tex. Crim. App. 1995); *Munoz v. State*, 2009 Tex. App. LEXIS 6475, 08-07-00325-CR (Tex. App. El Paso 2009, *no pet.*) (not designated for publication) (Expert testimony showed that the child was likely swung with great velocity, causing the child's head to strike an object with great force, and the cause of death was a "tremendous" and "vicious and violent" blow to the head).

### ii. There are many examples of where a young child has been killed or injured while believed to be in the custody of a sole adult caretaker, and the manner and means may not be clear.

There are many examples of this recurring pattern of where a young child has been killed or injured while believed to be in the custody of a sole adult caretaker, and in which the manner and means of the death or injury was not clear: *Herrera v. State*, 367 S.W.3d 762 (Tex. App. Houston [14th Dist.] 2012, *no pet.*) (Expert opined that injuries were "consistent with" several possible use-of-force scenarios); *Bearnth v. State*, 361 S.W.3d 135, 141 (Tex. App. Houston [1st Dist.] 2011, *pet. ref.*) (The defendant was the only adult in the house at the time the experts believed the injury could have taken place, and the jury could have viewed the defendant's changing explanations as evidence of guilt); *Williams v. State*, 294

S.W.3d 674, 683 (Tex. App. Houston [1st Dist.] 2009, *pet. ref.*) (Evidence sufficient because although the defendant was not seen harming the child and was not the only person with access to the child at the time of the injury, (1) the defendant admitted to being alone with the child at several periods during the time when injury occurred, and (2) expert testimony provided that the head injuries that caused the child's death could not have been inflicted in any of the ways the defendant offered as explanation, but instead must have occurred by violent shaking and physical abuse by an adult); *Duren v. State*, 87 S.W.3d 719, 726 (Tex. App. Texarkana 2002, *pet. struck*) (The jury was free to reconcile any conflicting testimony regarding the amount of force required to inflict injuries in favor of the testimony that suggested such enormous force was required that anyone inflicting it on a child 'must know' that death is reasonably certain to result); *Garcia v. State*, 16 S.W.3d 401, 405 (Tex. App. El Paso 2000, *pet. ref.*) (The evidence was sufficient because the defendant was the sole person with access to the child during the time that the expert opined that the child sustained the fatal injuries); *Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997) (The defendant admitted to killing the child, but claimed that his death was an accident. The defendant later buried the child); *Writ of habeas corpus granted and remanded by Ex parte Henderson*, 384 S.W.3d 833 (Tex. Crim. App. 2012) (During writ hearing, relying on new developments in biomechanics, six expert witnesses

17

testified that the type of injuries that the could have been caused by an accidental short fall onto concrete); *Roberson v. State*, 2015 Tex. App. LEXIS 4735, 05-13-01416-CR (Tex. App. Dallas May 8, 2015, *no pet.*) (memorandum opinion, not designated for publication) (The defendant was the "only person" who could have inflicted the injuries because the defendant was the last person who was with the child); *Castro v. State*, 2015 Tex. App. LEXIS 2399, 03-12-00730-CR (Tex. App. Austin Mar. 13, 2015, *pet. filed*) (not designated for publication) (Evidence showed that the defendant was "more physically aggressive" than he had admitted); *Lewis v. State*, No. 05-12-00844-CR (Tex. App. Dallas Jan. 6, 2014, *pet. ref.*) (memorandum opinion) (not designated for publication); *Crisp v. State*, No. 04-09-00580-CR (Tex. App. San Antonio Mar. 16, 2011, *pet. ref.*) (not designated for publication) (proof of defendant's sole access at time child suffered some form of blunt force trauma to the head found sufficient to meet State's burden).

### iii. Why is the State not required to prove beyond a reasonable doubt what happened and how the force was used?

Although the State may argue that it is difficult in these cases for it to prove beyond a reasonable doubt what exactly happened and how the force was used, considering that defendants accused of these crimes often receive life sentences (such as Appellant), this Court should questioned why the State is not required to do so. This issue is especially appropriate where a particular culpable mental state

must be proved. If the State is merely required to prove the defendant was present and failed to offer a plausible statement about what role he played, then it is the defendant's silence or poor attempt to explain an occurrence that is used to determine his guilt.

This Court has held that the jury is entitled to disregard the defendant's alternative explanations for what caused the death cannot "mean that the missing elements of the charged offense are supplied by this rejection." *Johnson v. State*, 673 S.W.2d 190, 196-197 (Tex. Crim. App. 1984), *overruled on another ground by Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991). Yet, in many cases, the defendant's alternative explanations for what caused the death are what is used to convict the defendant.

Although the State may argue that the defendant's evasive or unclear explanations of what occurred should be used to determine guilt, even a complete and supposedly truthful confession by the defendant must still be separately corroborated to justify a conviction. *Miller v. State*, 457 S.W.3d 919 (Tex. Crim. App. 2015) (Although this Court held that a strict application of the corpus delicti rule is unnecessary if a defendant confesses to multiple criminal offenses within a single criminal episode or course of conduct if the crimes confessed to are sufficiently proximate that the underlying policy reasons for the rule are not

violated, this Court also expressed belief that the corpus delicti rule should be retained because it serves "an important function").

Yet, in the types of cases identified in this petition and for which Appellant was convicted, any admission by a defendant that he was **merely present** at or around the time an expert testifies the injury occurred often seals the defendant's fate. What the defendant actually did is never proved beyond a reasonable doubt. Instead, what the defendant actually did is merely inferred in a general manner from the known result. But, as a matter of due process under the Fifth and Fourteenth Amendments, and under this Court's rulings in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) and *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012), and that of the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 316-319 (1979), the manner and means of assaultive conduct must be proved with more precision that what is presently allowed.

The reason for this is clear: in any crime involving intent or knowledge, there must exist a union between the conduct and the intent or knowledge. Personal volition must precede the act. And, awareness is the primary distinction between intentionally or knowingly committing an act versus negligently doing so. Intent and knowledge require an awareness of the harm likely to result from an act. Therefore, for a trier of fact to determine whether such awareness was present or can be proved, the conduct itself must be identified with enough specificity to

20

understand the causation. This is especially so where a person's state of mind is inferred from the person's words, acts, and conduct. In such situations, the nature of the conduct becomes critical. Otherwise, the analysis becomes mere speculation or bootstrapping, one inference is compounded upon another inference, and this is not within the definition of "beyond a reasonable doubt." As one court of appeals wrote,

> "A jury may not reasonably infer an ultimate fact from meager circumstantial evidence, none more probable than another. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997). To be legitimate or permissible, an inference must be deduced as a logical consequence of the facts presented in evidence, and must be a logical and rational connection between the facts in evidence and the fact to be inferred (internal citations omitted). With regard to the sufficiency of evidence in circumstantial evidence cases, one inference cannot be based upon another inference to reach a conclusion or sustain a conviction...*Williamson v. State*, 244 S.W.2d 202, 204 (Tex. Crim. App. 1951); *Lee v. State*, 214 S.W.2d 619, 622 (Tex. Crim. App. 1948). The stacking of one inference upon another is not considered evidence. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003)...."

*Allen v. State*, 249 S.W.2d 680, 703 (Tex. App. Austin 2008, *no pet.*).

As a result, it should not be sufficient for the State to merely eliminate the defendant's version of the event from consideration. Rather, the State should be required to prove beyond a reasonable doubt that the defendant must have consciously recognized that if he engaged in certain conduct, it was reasonably certain that death would result.

21

In fact, in *Louis v. State*, 393 S.W.3d 246, 251 (Tex. Crim. App. 2013), this Court recently wrote:

> "Capital murder is a result-of-conduct offense; the crime is defined in terms of one's objective to produce, or a substantial certainty of producing, a specified result, i.e. the death of the named decedent." *Roberts v. State*, 273 S.W.3d 322, 329 (Tex. Crim. App. 2008). The pertinent question, therefore, is whether the jury could have rationally determined beyond a reasonable doubt from the totality of the circumstantial evidence viewed in a light most favorable to its verdict that appellant had intent to cause the death of the child. *See Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 895.

The court of appeals in this case did **not** find that the jury could have rationally concluded Appellant had a specific desire to kill his son, but only "that Appellant was at least aware that his conduct was reasonably certain to cause [the CW's] death." Yet, the court of appeals affirmed the judgment of conviction.

### iv. The State cannot meet the requirements of Texas Penal Code § 6.02(a) if the State fails to identify the conduct alleged to have caused the injury or death

Without identifying the conduct alleged to have caused the injury or death, beyond a reasonable doubt, the State cannot meet the requirements of Texas Penal Code § 6.02(a), which in Capital Murder cases requires the state to prove that the defendant acted intentionally or knowingly (because otherwise the defendant "does not commit an offense"). *See* Tex. Pen. Code § 6.02(a) (2011). Otherwise, the state of the law in this cases is little more than a trier of fact concluding that if the defendant "did A, B, and C," the defendant *had* to be aware of the certainty of the

22

consequences of what the State thinks the defendant did, and therefore the defendant must be guilty. *See e.g., Hasel v. State*, 12-14-00101-CR, 2015 Tex. App. LEXIS 6091 (Tex. App. Tyler June 17, 2015, *no pet. hist.*) (memorandum opinion) (not designated for publication) (The defendant's statements about the incident were deemed to be useful in determining that he acted intentionally or knowingly, even though the precise manner of injury was undetermined). One court has even approved the use of expert testimony that any actor should be aware of the likelihood of death where he causes severe head trauma in any manner. *See Montgomery v. State*, 198 S.W.3d 67, 83-84 (Tex. App. Fort Worth 2006, *pet. ref.*).

Further, Appellant questions why more certainty about the *actus reus* is unnecessary before the *mens rea* may be characterized with the requisite standard of proof. Texas Penal Code § 19.03 may comprehend that the commission of the offense is proved whenever one does *anything* with knowledge that the prohibited result is reasonably certain to come about. However, § 19.03 cannot be read to mean that whenever the prohibited result occurs, the defendant had notice that his conduct would cause the result.

In addition, common sense dictates that a mental state may be inferred only if the nature of the conduct is first established. And, not every "unnatural death" due to the act of a person is murder. Most importantly, "the utterance of false statements or inconsistent statements is, by itself, not sufficient to support an

23

inference that the commission of a separate crime or wrongful conduct has occurred" with the requisite culpability. *Stobaugh v. State*, 421 S.W.3d 787, 866 (Tex. App. Fort Worth 2014, *pet. ref.*).

The present state of the interpretation of the law causes the following result: the **only** defense to the accusation of "you must have done something that caused the death" is for a defendant to testify and say "I did nothing to cause the death." But, such an assertion will be met with the State's demand to the defendant to "tell us everything you did." A defendant cannot rely on the burden of proof as a defense because the State has no real burden. Rather, the State's modus operandi in these types of cases is "we need not prove what he did or how or why it happened, but only that the death was not natural, but inflicted, and, at least without further explanation, the defendant has to have been the perpetrator acting with the requisite awareness of the danger presented." In such situations, a person innocent of murder is convicted, and cannot effectively defend himself because he must take the stand and waive his Fifth Amendment rights because silence at trial is not a true option.

Such results must be abandoned in favor of a real presumption of innocence. In the type of cases described in this petition, concepts of moral culpability, blameworthiness, and the right to remain silent have been sacrificed in favor of expediency through use of a legal fiction that the circumstances surrounding the

act is fully proved by the result. And because the penalty for these offenses is automatic and very harsh (often life in prison without the possibility of parole as in Appellant's case) the trial becomes a foregone conclusion based only on the presence of the defendant at the scene **plus** the defendant's subsequent refusal to serve as the State's eyewitness. The horrific nature of the injury overrides all other considerations, and such a result is contrary to the protections offered in other types of cases and by the Fifth and Fourteenth Amendments.

In support of its conclusion that the jury could rationally have find Appellant guilty beyond reasonable doubt, the court of appeals made these comments:

> "The jury was free to disbelieve Dr. Ophoven and believe the State's expert testimony [and particularly that Joniah's previous serious head injury was not the cause of death]...
>
> [W]hile Joniah was at home alone with Appellant, he sustained a severe, intentionally inflicted traumatic head injury that resulted in his death. From this evidence, a rational jury could have reasonably inferred that Appellant caused Joniah's death. . . . Any violent assault on a young child may be reasonably expected to cause death...
>
> Joniah's injuries were severe, extensive, and numerous. He had bruises, abrasions, burns, broken bones, and severe traumatic head injuries. He was an eleven-month-old child and Appellant a grown man. Based on our review of the record, we conclude that a rational jury could have found that Appellant was at least aware that his conduct was reasonably certain to cause Joniah's death. We therefore hold that the evidence is sufficient to support the jury's verdict.

It is clear that the court of appeals did not deal with the question identified in *Louis*. Further, it did not address any of the other concerns described above or

25

those that Appellant raised in his Appellant's Brief. Appellant will not restate all of the facts and arguments here, but as an example of how the present state of affairs leads to the unjust result that occurred in this case, the State's experts and the officer concluded that most of the marks on the CW were "burns." This is despite the fact that while in the ER and later while in the ICU, the CW was injected with a lot of fluids, causing his weight to increase from 22 pounds to 28 pounds (a whopping increase of 27%). (RR3, 244-245; RR5, 91-93; RR7, SX-17).

One expert and the officer, whose credibility is highly suspect, even claimed that the "burn patterns" on the CW's skin were consistent with a white space heater found at the home. (RR3, 202; RR4, 107; RR5, 30-31; RR7, SX-3). Although the marks on the palm of the CW's right hand are parallel burns, and were most likely caused by the space heater, when this Court reviews State's Exhibits 7, 9, 10, 11, 12, 13, 14, and 15, it will find that **the marks on the CW's body could not have been caused by the space heater** that is depicted in State's Exhibit 2, and as the State witnesses claim. (RR3, 36, 73; RR7, SX-2). This space heater, which is depicted here, is has six perfectly lineal elements that run parallel to one another and perpendicular to the floor:



And, very low amounts of the DNA of Appellant and the CW were found on the space heater. (RR4, 142-143). Had Appellant used a space heater to cause the marks on the CW, the space heater would have contained much higher levels of the CW's DNA, and the marks on the CW would have been **lineal and not circular.** Yet, State witnesses testified that the **circular** marks on the CW are "burns" caused by this space heater. (RR3, 198; RR7, SX-9).

It is not enough to say that the State proved the explanation for the injuries offered by Appellant and his expert witness should be discarded, or that there was opinion testimony that the fatal injuries were intentionally inflicted. None of the State's experts sought to account for the CW's sudden change in growth beginning about four months prior to his death. (RR5, 68, 72-73, 77-80). Dr. Quinton's assumption that the CW merely began to fail to thrive, probably for environmental reasons, was entirely speculative and did not reference the dramatic and sudden change testified to by Dr. Ophoven. (RR6, 51-52).

Finally, the State failed to prove the death was caused by the manner and means alleged by the State, which was the striking of the CW by Appellant's hand or "another object." When a specific means in which a statute was violated is alleged, the evidence must conform to the allegation, otherwise charging instruments become irrelevant. Here, there was a failure to prove what was alleged. There was evidence presented that the subdural hematoma was acceleration-deceleration in nature, and may have "consistent with" a striking of the CW's head with or against an object. Because the jury was charged using the language of the indictment, it was not asked to evaluate the reliability of the State's evidence, but rather was required to find only that an injury occurred. This does not mean that the jury resolved the conflicts in the testimony of the experts in favor of the State.

Appellant recognizes that this Court has determined that an allegation about the cause of death in a murder indictment need not be proved because the focus or gravamen of the offense (a resultant death) is still proved. *Johnson v. State*, 364 S.W.3d 292, 296-297 (Tex. Crim. App. 2012). But, the jury must still make its findings of fact according to those asked about in the charge. The theory of liability presented by the court should be narrowed according to the evidence because otherwise the verdict will be based on an allegation not proved. *See Goka v. State*, 657 S.W.2d 20, 22 (Tex. App. Houston [1st Dist.] 1983, *pet. ref.*) ("Submission of a theory not supported by evidence is error...").

Appellant may or may not have known or intended that any conduct on his part would have caused the death of his son. Without proving beyond a reasonable doubt what his conduct exactly was, it is impossible to say. Even if one concludes that Appellant may have minimized some part of his conduct in his descriptions to Sanford, Dr. Nesiama, or the police, Appellant may have accurately described the bathtub tussle and the fact that he did not know why his son stopped breathing. Defendants cannot and should not be convicted merely because they do not "come clean" or fail to fully and accurately describe what they witnessed or did. Without an admission of guilt or nonspeculative reasoning about the "how and why" of the offense, prosecutions in cases such as this turn into strict liability standards based on the defendant's invocation of this Fifth Amendment rights. In this case, Appellant even agreed to answer questions posed by the police, and he never admitted to violently striking his son. (RR4, 94, 104, 120).

Conjecture should never be used as a means of convicting a person, and a thorough assessment of the evidence in this case will find that conjecture and not reasonable inference is what caused the jury to reach their verdict. *See Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013) ("A conclusion reached by speculation... is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."). After giving "proper deference" (and not total deference) to the role of the trier of fact, it is this Court's responsibility to confirm

29

that the evidence reached the requisite "high degree of certainty." *See Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002). And although this Court must "uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element," a review of the evidence in this case should lead this Court to conclude that the jury in this case was not rational. *Laster*, 275 S.W.3d at 518; *Brooks*, *id*. at 902 n.1.

## IX. Conclusion and Prayer

For the reasons stated in this petition, the Court of Appeals has: (1) decided an important question of state and federal law that has not been, but should be, settled by the Court of Criminal Appeals; and (2) decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States. *See* Tex. Rule App. Proc. 66.3 (2015). Appellant respectfully prays that this Court grant discretionary review, reverse the judgment of conviction and sentence, and enter a judgment of acquittal.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 No. 3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
By: Michael Mowla

## X. Certificate of Service

This certifies that on July 25, 2015, a copy of this document was served on Lori Ordiway and Lisa Smith of the Dallas County District Attorney's Office, Appellate Division, 133 N. Riverfront Boulevard, Dallas, Texas 75207 by email to lori.ordiway@dallascounty.org, lisa.smith@dallascounty.org, and DCDAAppeals@dallascounty.org; and also on Anna Kubalak at Anna.Kubalak@dallascounty.org; and on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

## XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 4,475 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented (grounds for review section), statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX

## *Baker v. State*

Court of Appeals of Texas, Twelfth District, Tyler

June 30, 2015, Opinion Delivered

NO. *12-14-00185-CR*

**Reporter**

2015 Tex. App. LEXIS 6642

JONATHAN BAKER, APPELLANT v. THE STATE OF TEXAS, APPELLEE

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] Appeal from the 283rd District Court of Dallas County, Texas. (Tr.Ct.No. F-1300422-T).

## Core Terms

trial court, injuries, hemorrhage, severe, older, head injury, imprisonment, modified, subdural, argues, trial court's judgment, capital murder, breathing, traumatic, bathtub, parole, brain, legal sufficiency, witnesses, symptoms, bruises, arrest, burns

## Case Summary

### Overview

HOLDINGS: [1]-Evidence was sufficient to support a finding that defendant acted intentionally or knowingly to cause the child's death because while the child was at home alone with defendant he sustained a severe, intentionally inflicted traumatic head injury that resulted in his death, and the child's injuries were severe, extensive and numerous; [2]-Modification of the judgment was necessary because defendant was thirty years old when he committed the offense and his punishment was imprisonment for life without parole.

### Outcome

Judgment affirmed as modified.

## LexisNexis® Headnotes

Evidence > Weight & Sufficiency

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of Evidence

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

*HN1* The Jackson v. Virginia legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The evidence is examined in the light most favorable to the verdict. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. A court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court.

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Weight & Sufficiency

*HN2* The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. Such a charge would include one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried.

Criminal Law & Procedure > ... > Murder > Capital Murder > Elements

*HN3* To prove a defendant guilty of capital murder under *Tex. Penal Code Ann. § 19.03(a)(8)*, the State is required to prove that defendant intentionally or knowingly caused the victim's death, and that the victim is under ten years of age. *Tex. Penal Code Ann. § 19.03(a)(8)* (Supp. 2014).

Evidence > Admissibility > Circumstantial & Direct Evidence

*HN4* The appellate court uses the same standard of review for both circumstantial and direct evidence cases.

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

*HN5* The jury was free to disbelieve one expert and believe another expert's testimony.

Criminal Law & Procedure > ... > Acts & Mental States > Mens Rea > General Intent

Criminal Law & Procedure > ... > Acts & Mental States > Mens Rea > Specific Intent

Criminal Law & Procedure > ... > Acts & Mental States > Mens Rea > Knowledge

*HN6* A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Tex. Penal Code Ann. § 6.03(a)* (2011). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause

the result. *Tex. Penal Code Ann. § 6.03(b)* (2011). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct. *Tex. Penal Code Ann. § 6.03(b)*.

Criminal Law & Procedure > ... > Homicide, Manslaughter & Murder > Murder > General Overview

Criminal Law & Procedure > ... > Crimes Against Persons > Assault & Battery > General Overview

Criminal Law & Procedure > Criminal Offenses > Acts & Mental States > Mens Rea

*HN7* In considering whether an assault was committed with the requisite mental state for murder, a court takes into account the extent of the injuries and the relative size and strength of the parties. Any violent assault on a young child may be reasonably expected to cause death.

Criminal Law & Procedure > ... > Discovery by Defendant > Expert Testimony > Notice of Intent to Call

Criminal Law & Procedure > ... > Discovery by Defendant > Expert Testimony > Appellate Review & Judicial Discretion

*HN8* Notice of the witnesses that the State intends to call at trial must be given upon request by the defense. A trial court's decision to allow a witness who was not on the State's witness list to testify is reviewed for an abuse of discretion. Among the factors that an appellate court considers in such a review are (1) whether the state's actions in calling a previously undisclosed witness constituted bad faith, and (2) whether the defendant could have reasonably anticipated that the witness would testify.

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Requirements

*HN9* A claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. *Tex. R. App. P. 33.1(a)*. If a party fails to properly object to errors at trial, even constitutional errors can be forfeited. Specifically, a defendant waives his constitutional right to confront witnesses if he does not object to the denial of that right at trial.

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Disqualification & Recusal

Governments > Courts > Judges

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

*HN10* Due process requires a neutral and detached hearing body or officer. Absent a clear showing of bias, a trial court's actions will be presumed to have been correct.

Criminal Law & Procedure > Sentencing > Ranges

*HN11* Under the Texas Penal Code, a person convicted of a capital felony in a case in which the State does not seek the death penalty shall be punished by imprisonment for life without parole if the person was eighteen years of age or older when the offense was committed. *Tex. Penal Code Ann. § 12.31(a)* (Supp. 2014).

Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > General Overview

*HN12* An appellate court has authority to correct a trial court's judgment to make the record speak the truth when it has the necessary data and information.

**Counsel:** For Appellant: Michael Mowla.

For State: Johanna Helene Kubalak.

**Judges:** Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

**Opinion by:** JAMES T. WORTHEN

## Opinion

*MEMORANDUM OPINION*

Jonathan Baker appeals his conviction for capital murder, for which he was assessed a sentence of imprisonment for life. In three issues, Appellant argues that the evidence is legally insufficient to support his conviction and that the trial court erred by allowing a witness to testify in violation of the court's pretrial discovery order. We modify the trial court's judgment to reflect no possibility of parole and affirm the judgment as modified.

### BACKGROUND

Appellant was charged by indictment with capital murder and pleaded "not guilty." The matter proceeded to a jury trial.

The evidence at trial showed that on December 7, 2011, eleven-month-old Joniah Baker had been at home all day with his father, Appellant. That afternoon, Joniah arrived at Children's Medical Center with a bluish, grayish tint to his skin, cold, and unresponsive. Medical professionals attempted to save Joniah's life, but he was pronounced dead on December 9, 2011. Many injuries, new and old, were found during examination and autopsy. The medical **[*2]** examiner ruled the death a homicide, and Appellant was charged with capital murder.

Ultimately, the jury found Appellant "guilty" of capital murder. The State did not seek the death penalty, and Appellant's punishment was assessed at imprisonment "for the rest of [his] lifetime." This appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first issue, Appellant argues that the evidence is legally insufficient to support a finding that he acted intentionally or knowingly to cause Joniah's death.

**Standard of Review and Governing Law**

*HN1* The *Jackson v. Virginia*[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)*. Legal sufficiency is the constitutional minimum required by the *Due Process Clause of the Fourteenth Amendment* to sustain a criminal conviction. *See Jackson, 443 U.S. at 315-16, 99 S. Ct. at 2786-87*; *see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd)*. The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789*; *see also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)*. The evidence is examined in the **[*3]** light most favorable to the verdict. *See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789*; *Johnson, 871 S.W.2d at 186*. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks, 323 S.W.3d at 899*; *see Jackson, 443 U.S. at 319, 99 S. Ct. at 2789*. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson, 443 U.S. at 326, 99 S. Ct. at 2793*. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982)*.

*HN2* The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)*. Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

*HN3* To prove Appellant guilty of capital murder in this case, the State was required to prove **[*4]** that he intentionally or knowingly caused Joniah's death, and that Joniah was under ten years of age. *See* TEX. PENAL CODE ANN. § 19.03(a)(8) (West Supp. 2014).

## Events Preceding Joniah's Death

Joniah's mother, Tamika Sanford, testified that Joniah was born in December 2010. He lived with both of his parents and Appellant's mother. Neither parent was working when Joniah was born. Sanford began working when Joniah was five months old. Sometime after Sanford began working, Appellant's mother moved out of the home, and Joniah was left in Appellant's sole care while Sanford was at work. Sanford would go to work at either 5:00 a.m. or 7:00 a.m. and return home around 2:00 p.m. or 4:00 p.m. Appellant would then leave to go "hang out" until anywhere from 10:00 p.m. to 2:00 a.m. before returning home.

On the morning of December 7, 2011, Appellant, Joniah, and Sanford rode together to Sanford's workplace. When Appellant dropped Sanford off at work around 7:00 a.m., Joniah appeared fine. On the previous night, he had been eating, drinking, sleeping, and behaving normally. Sanford called Appellant at around 10:00 a.m. on her lunch break, as was her routine. They had a very brief phone

---

[1] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

conversation in which Appellant **[*5]** told Sanford that Joniah was sleeping and did not indicate that anything was wrong. Sanford did not hear from Appellant again until he called on his way to pick her up from work. At that time, Appellant told Sanford that they needed to go to the hospital because Joniah's breathing was faint.

Dr. Jo-Ann Nesiama was the physician in charge of the emergency room when Joniah was brought in. She testified that when Joniah arrived, he was not moving or breathing. There were indicators that he had not been breathing for some time. He was a bluish, grayish color and he was very cold. After intubation, Dr. Nesiama saw blood coming from the tube that was placed into Joniah's lungs, which also indicated he had not been breathing for a while.

When Dr. Nesiama asked Appellant what happened to Joniah, Appellant stated that Joniah woke up sick that morning. He said that he put him down for a nap, and that he woke up around 11:30 a.m. not acting like himself. He stated that he woke up again at 3:00 p.m. still not acting like himself, so he brought him to the hospital. Because Appellant's story did not seem to explain how Joniah's injuries happened, Dr. Nesiama had a social worker contact CPS and Dr. **[*6]** Matthew Cox, a board certified child abuse pediatrician.

That same evening, detectives with the Dallas Police Department arrived at the hospital and spoke with Appellant and Sanford. Appellant and Sanford did not provide any explanation for Joniah's injuries. Later that night, Appellant agreed to an interview at the police station. In the interview, Appellant told the police that he and Joniah had gone back to sleep after dropping Sanford off. He got Joniah up around 12:00 p.m., fed him, and began to bathe him in his baby bathtub.

According to Appellant, Joniah began to throw a fit during the bath. Appellant was soapy and scratched Joniah's back and legs trying to hold onto him. Joniah flung himself back, hit his head on the bathtub, and then fell sideways and hit his head again. Appellant patted Joniah's chest and said, "Stop tripping, fool." He took Joniah out of the bathtub and shook him a little, saying, "Look. You're tripping, man. Chill out for a minute, man. You hear me?" He put Joniah on the bed in front of the television with some juice and with pillows around him. When he was getting Joniah dressed to go pick up Sanford, he noticed that his breathing was short. He bit Joniah's **[*7]** heels when putting his pants on because he was in a hurry.

Some parts of Appellant's story changed during the interview. Appellant was arrested after the interview and charged with injury to a child. Joniah subsequently died after being taken off life support, and Appellant was indicted for capital murder.

## State's Expert Testimony

Dr. Matthew Cox testified that he saw Joniah the day after he was brought to the hospital. Joniah was unresponsive and being kept alive through life support measures. Dr. Cox noted multiple linear skin injuries located on various surfaces of Joniah's body. The appearance of the injuries was consistent with that of a burn. Dr. Cox also noted bruising on both of Joniah's feet. The original imaging studies showed a healed rib fracture, and subsequent imaging studies revealed a new rib fracture as well.

Dr. Cox reviewed the ophthalmology consult, which showed diffuse intraretina, preretina, and subretina hemorrhage in both sides and retinal detachment in the left eye. He stated that the extensive

and diffuse retinal hemorrhages were the most severe version of retinal hemorrhages and are seen in the most severe traumatic events.

Head imaging revealed a new hemorrhage **[*8]** on the back between the brain hemispheres and around the back surface of Joniah's brain. There were also fluid collections on both sides of Joniah's head that were concerning for older hemorrhage. Dr. Cox said that the older hemorrhage was at least ten days old based on the appearance, but he could not give an upper limit.

Dr. Cox testified that the symptoms Joniah presented with—altered breathing, altered muscle tone, being floppy—were symptoms of a severe head injury. He stated that Joniah would have been acting differently and exhibiting severe symptoms immediately after sustaining such a severe injury. He stated that the older head injury, which was milder, might have caused symptoms such as not eating as well, vomiting, and acting dazed, confused, fussy, and sleepy.

Dr. Cox spoke with Sanford and took a detailed history of Joniah's past, his recent symptoms, and what brought him to the hospital the night before. Sanford told Dr. Cox that she saw Joniah fall off the bed about a week and a half to two weeks prior to his hospitalization. She said that he cried, she consoled him, and he seemed normal afterwards. Sanford said that Joniah had a second fall a few days later when he was **[*9]** with Appellant. She did not witness that fall and did not provide any details of it.

Dr. Cox testified that the pattern of Joniah's head injuries was different from the pattern he sees in children who fall off a bed. Dr. Cox further testified that Joniah's injuries were not the type he would expect to see from a baby bumping his head on a plastic baby bathtub, or even a standard adult bathtub, even if the baby were having a seizure in the bathtub. He said that Joniah's brain injuries were the type that are seen after a severe and violent traumatic event, such as when someone injures a child or the child is involved in a motor vehicle collision.

Dr. Cox concluded that the history provided did not explain Joniah's injuries. He further concluded that the pattern of medical findings indicated at least two episodes of trauma with a new episode on the day he presented at the hospital. The injuries were consistent with a striking with or against an unknown object. According to Dr. Cox, the medical findings were consistent with intentionally inflicted injuries and child physical abuse.

Dr. Stephanie Burton is the medical examiner who performed Joniah's autopsy. Her examination revealed numerous **[*10]** injuries, both internal and external. Joniah's external injuries included bruises on his head; abrasions on his neck, chest, and back; and bruises suspicious for bite marks on both heels. He also had twenty-six burns, the majority of which were paired, linear, and parallel, and measured one and three-fourths inches apart. Dr. Burton determined that the distance between these paired burns was consistent with the distance between the coils of a radiator-style space heater that was found in Appellant's home.

Internally, Dr. Burton found a subcutaneous area of hemorrhage in Joniah's chest, a subcutaneous contusion on his back, another on his left buttock, and a large area of contusion on his right lower back and buttock. Joniah also had two fractured ribs, one recent, one just beginning to heal, and another older one that had been healing for a while.

On Joniah's head, Dr. Burton found an area of hemorrhage under one of the two head bruises, and another area of hemorrhage in a third location. Thus, there were three impact sites on the head. After

removing the skull, Dr. Burton found recent subdural and subarachnoid hemorrhages over the top and bottom of the brain. She stated that a child **[*11]** with such hemorrhages would have an immediate change in consciousness, including possible unresponsiveness and probable seizure activity. Dr. Burton also found an older hemorrhage, which she estimated to be less than fourteen days old but older than the new ones. An ophthalmologist and pathologist evaluated Joniah's eyes and found diffuse retinal hemorrhages, optic nerve sheath hemorrhage, optic nerve head hemorrhage, and a detached retina.

Dr. Burton testified that all of her findings together indicated acceleration-deceleration injury to Joniah. She concluded that he died of a closed head injury with the burns contributing to his death, and that the manner of death was homicide. She defined homicide as being caused by an intentional act of another person. Dr. Burton further opined that there was no type of accidental history that could explain Joniah's injuries.

Dr. Reade Quinton is a medical examiner who was present at Joniah's autopsy. He testified that there was a newer subdural and an older subdural. Dr. Quinton believed the older subdural to be months old. He did not believe that the older subdural caused Joniah's death. He agreed that Joniah died as a result of a closed head **[*12]** injury and that the manner of death was homicide.

### Defense Expert Testimony

Dr. Janice Ophoven is a pediatric forensic pathologist who testified for the defense. She reviewed the reports, records, and specimens from Joniah's case and believed that he presented at the hospital with cardiac arrest. She opined that he suffered from complications of a chronic subdural hematoma that likely occurred sometime in July 2011. He then suffered subsequent impacts in the days prior to his collapse. And on December 7, 2011, Joniah suffered sudden increased intercranial pressure and subdural bleeding, which led to his cardiac arrest that day. The cardiac arrest resulted in a lack of oxygen to the brain. According to Dr. Ophoven, this lack of oxygen to the brain was the cause of Joniah's death.

Dr. Ophoven testified that there was no evidence that Joniah had a severe violent impact on the date of his cardiac arrest. She said any number of things could have resulted in his sudden deterioration, including rough handling or an accident. On cross examination, Dr. Ophoven stated that the chronic subdural hematoma that occurred in July was caused by blunt force trauma to the head. She was not given a history **[*13]** of any traumatic event occurring in July.

### Analysis

Appellant contends that the State's case against him was entirely circumstantial. Therefore, he argues that we should consider the existence of all alternative reasonable hypotheses and inferences in conducting our legal sufficiency review. However, the court of criminal appeals abandoned the alternative reasonable hypothesis construct for reviewing the sufficiency of the evidence in circumstantial evidence cases in *Geesa v. State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991)*. **HN4** We now use the same standard of review for both circumstantial and direct evidence cases. *Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)*.

In support of his insufficiency claim, Appellant argues that the evidence does not support the idea that Joniah was not injured when he fell off the bed. He cites evidence that the carpet in the room was thin

and without padding. Appellant cites other evidence that Joniah bumped his head on a coffee table in September 2011. He claims that the jury failed to recognize Joniah's previous trips to the emergency room for spitting up blood and vomiting. Appellant further cites Dr. Ophoven's testimony that she believed Joniah died as a result of a chronic subdural hematoma he sustained in July 2011. And he claims that the State failed to **[*14]** rebut evidence of a serious traumatic head injury occurring in July 2011. However, the State's experts agreed that a previous serious head injury occurred, but they did not believe it was the cause of death. *HN5* The jury was free to disbelieve Dr. Ophoven and believe the State's expert testimony. *See Brooks, 323 S.W.3d at 899*; *Jackson, 443 U.S. at 319, 99 S. Ct. at 2789*. And, as we have noted above, we are not required to determine whether the evidence excludes every alternative reasonable hypothesis other than guilt. *See Geesa, 820 S.W.2d at 159*.

Viewed in the light most favorable to the jury's verdict, the evidence shows that sometime after Appellant dropped Sanford off at work, while Joniah was at home alone with Appellant, he sustained a severe, intentionally inflicted traumatic head injury that resulted in his death. From this evidence, a rational jury could have reasonably inferred that Appellant caused Joniah's death.

The State further had to prove that Appellant caused Joniah's death intentionally or knowingly. *HN6* A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *TEX. PENAL CODE ANN. § 6.03(a)* (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware that **[*15]** his conduct is reasonably certain to cause the result. *Id. § 6.03(b)* (West 2011). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Lee v. State, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd)*. Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct. *Id. HN7* In considering whether an assault was committed with the requisite mental state for murder, we take into account the extent of the injuries and the relative size and strength of the parties. *Lindsey v. State, 501 S.W.2d 647, 648 (Tex. Crim. App. 1973)*. Any violent assault on a young child may be reasonably expected to cause death. *Id.*

Here, Joniah's injuries were severe, extensive, and numerous. He had bruises, abrasions, burns, broken bones, and severe traumatic head injuries. He was an eleven-month-old child and Appellant a grown man. Based on our review of the record, we conclude that a rational jury could have found that Appellant was at least aware that his conduct was reasonably certain to cause Joniah's death. We therefore hold that the evidence is sufficient to support the jury's verdict. Accordingly, Appellant's first issue is overruled.

### DISCOVERY ORDER VIOLATION

In his second and third issues, Appellant **[*16]** argues that the trial court erred by permitting Dr. Nesiama to testify in violation of the court's pretrial discovery order.

Generally, *HN8* notice of the witnesses that the state intends to call at trial must be given upon request by the defense. *Hamann v. State, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)*. A trial court's decision to allow a witness who was not on the state's witness list to testify is reviewed for an abuse of discretion. *Id.* Among the factors that an appellate court considers in such a review are (1) whether the state's actions in calling a previously undisclosed witness constituted bad

faith, and (2) whether the defendant could have reasonably anticipated that the witness would testify. *Id.*

In this case, trial began on a Tuesday, and defense counsel told the trial court that the State only gave her Dr. Nesiama's name "like Thursday of last week." Defense counsel said that she had received notice from the State that one of the witnesses previously disclosed would be unavailable for trial. The prosecutor told her that he would like to substitute Dr. Nesiama, and he provided Dr. Nesiama's cell phone number. Additionally, the State had tendered the emergency room records that Dr. Nesiama was to testify from to the defense "probably **[*17]** twelve to eighteen months" before trial. The trial court allowed the parties to question Dr. Nesiama outside the presence of the jury.

After that hearing, defense counsel objected to Dr. Nesiama's testimony on the grounds that allowing her testimony would violate the trial court's pretrial orders. Counsel stated that she relied on those orders in preparing for trial. And she argued that allowing Dr. Nesiama to testify would deprive Appellant of his *Fifth* and *Sixth Amendment* rights to effective assistance of counsel. The trial court overruled defense counsel's objection and allowed Dr. Nesiama to testify. However, the trial court limited Dr. Nesiama's testimony to Joniah's treatment and injuries, and that the criteria were met for her to alert the social worker. The trial court did not allow Dr. Nesiama to give her opinion as to whether Joniah's injuries were accidental or the result of abuse.

As part of Appellant's second issue, he argues that Dr. Nesiama's testimony should have been excluded from evidence because the State willfully withheld its intent to use her as a witness. But we have found no evidence that the State did so or in any way acted in bad faith. The record indicates that when the treating **[*18]** emergency room physician the State had planned to call became unavailable, the prosecutor notified Appellant's counsel that he wished to substitute Dr. Nesiama to give testimony regarding the same facts the other doctor would have. And he provided defense counsel Dr. Nesiama's phone number and told Dr. Nesiama to expect a phone call.

Furthermore, the record indicates that Appellant could have reasonably anticipated that Dr. Nesiama would testify. The prosecutor told the trial court that Dr. Nesiama's name was listed in the emergency room records. Those records were provided to Appellant twelve to eighteen months prior to trial. Under these circumstances, we conclude that the trial court did not abuse its discretion by allowing Dr. Nesiama's testimony. Accordingly, we overrule the portion of Appellant's second issue regarding the trial court's discretion to allow the testimony.

Additionally in his second issue, Appellant argues for the first time that the trial court violated his Sixth Amendment right to confrontation of witnesses by permitting Dr. Nesiama to testify. In general, **HN9** a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific **[*19]** request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. *Tex. R. App. P. 33.1(a)*; ***Geuder v. State****, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003)*. If a party fails to properly object to errors at trial, even constitutional errors can be forfeited. ***Clark v. State****, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)*. Specifically, a defendant waives his constitutional right to confront witnesses if he does not object to the denial of that right at trial. ***Holland v. State***, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991). Appellant did not object to Dr. Nesiama's testimony at trial on confrontation grounds. Thus, he did not preserve his complaint regarding his right to confrontation. *See Tex. R. App.*

*P. 33.1(a)*. Accordingly, we overrule the portion of Appellant's second issue regarding his right to confrontation.

In his third issue, Appellant argues for the first time that the trial court violated his *First*, *Fifth*, and *Fourteenth Amendment* rights to a neutral and impartial judge by permitting Dr. Nesiama to testify. **HN10** Due process requires a neutral and detached hearing body or officer. **Brumit v. State***, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006)*. Absent a clear showing of bias, a trial court's actions will be presumed to have been correct. **Id.**

Here, Appellant bases his argument that the trial judge was not neutral and impartial on the judge's allowing Dr. Nesiama to testify **[*20]** in violation of the discovery order. We have already concluded that the trial court did not abuse its discretion by allowing Dr. Nesiama's testimony. We have reviewed the record and found no clear showing of bias. Therefore, we conclude that the trial court did not violate Appellant's right to a neutral and impartial judge. Accordingly, we overrule Appellant's third issue.

### ERROR IN JUDGMENT

Although neither party has raised the issue, our review of the record reveals an error in the trial court's judgment. At trial, the trial court sentenced Appellant to imprisonment in the institutional division ″for the rest of [his] lifetime.″ The judgment, however, reflects the punishment as imprisonment for life not imprisonment for life without parole.

**HN11** Under the penal code, a person convicted of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment for life without parole if the person was eighteen years of age or older when the offense was committed. *TEX. PENAL CODE ANN. § 12.31(a)* (West Supp. 2014). The record shows that Appellant was thirty years old when he committed the offense. Therefore, his punishment is imprisonment for life without parole, **[*21]** and the judgment should be modified accordingly. *See* **id.**; **Asberry v. State***, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)* (**HN12** appellate court has authority to correct trial court's judgment to make record speak the truth when it has necessary data and information).

### DISPOSITION

Having overruled all of Appellant's issues, we **modify** the trial court's judgment to reflect that Appellant's punishment is imprisonment for life without parole, and **affirm** the judgment as modified.

*JAMES T. WORTHEN*

Chief Justice

Opinion delivered June 30, 2015.

*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

**JUDGMENT**

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** to reflect that Appellant's punishment is imprisonment for life without parole; **and that as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

James T. Worthen, Chief Justice.